LUCY ROSEBROCK, as Administratrix of the Estate of EDWIN D. ROSEBROCK, Deceased, Appellant and Respondent, *v.* GENERAL ELECTRIC COMPANY, Appellant, and TONAWANDA POWER COMPANY, Respondent.

**Negligence — death of workman engaged in installing electric transformer through short circuit caused by hidden wooden packing blocks — manufacturer guilty of negligence in shipping transformer in such condition that its use would be dangerous without giving notice of the danger — negligence of purchaser in not discovering blocks does not relieve manufacturer from liability — Workmen's Compensation Law not applicable where claim is against third party not employer — charge.**

1. In an action against a manufacturer for the death of an employee of the purchaser of two of its electric current transformers, alleged to have been caused by the presence therein of hidden blocks of wood placed there to sustain and keep secure " the coils " while in transit, which, when the current was turned on, caused a short circuit and explosion, an examination of the record discloses that the evidence as to the cause of the accident presented a question of fact for the jury and that there was sufficient evidence to sustain the jury's findings that the employer did not know that the wooden blocks were in the

transformers and that the defendant failed to give its usual and customary notice or caution regarding this danger.

2. If transformers, as known to the trade, were generally packed with wooden blocks in shipment, and the defendant had reason to believe that the purchaser knew this and would take them out, then the defendant would not be liable in selling its transformers without notice regarding the blocking because it would be guilty of no negligence. In determining the defendant's negligence, the jury were obliged to take into consideration the customary way of selling, packing and shipping transformers, the knowledge of the trade and the inherent danger of the article sold. From these facts, the jury would say whether the defendant was justified in relying upon the purchaser to remove the blocking. If under the circumstances of the case the defendant were negligent it was not relieved from liability because the purchaser was negligent in not discovering the negligence or preventing its natural result.

3. Where it appears that the transformers were received like a completed instrument with brass plates thereon giving directions about connection and use and a caution not to " touch primary coils," that the purchaser had previously used transformers without examining them and that transformers were not usually packed with wood as were these, the purchaser was not bound to take apart and examine them, but the manufacturer, which itself had established the practice of giving a caution it deemed necessary, was liable for the results of sending out its transformers in a dangerous condition, where it is found upon sufficient evidence that its customary caution had been omitted.

4. The dismissal of the complaint as to a co-defendant cannot be deemed prejudicial to defendant as a direction to the jury that the turning on of the full power was not negligent, where the turning on of full power had nothing to do with the breakdown of the transformers.

5. The authority of the state industrial commission to bring this action was not required, the claim being against a third party, not the employer.

6. The charge of the court as to the negligence of defendant and the refusal to charge as requested in regard to its liability examined and found correct.

*Rosebrock* v. *General El. Co.,* 204 App. Div. 854, affirmed.

(Argued May 10, 1923; decided July 13, 1923.)

APPEAL by plaintiff, by permission, from so much of a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered January

10, 1923, as unanimously affirmed a judgment in favor of defendant Tonawanda Power Company entered upon a dismissal of the complaint as to it by the court at a Trial Term. Appeal by defendant General Electric Company, by permission, from so much of said judgment as unanimously affirmed a judgment against it and in favor of plaintiff entered upon a verdict.

*Adelbert Moot, Richmond D. Moot* and *Welles V. Moot* for appellant. There was no duty on the part of the General Electric Company to warn the Niagara Falls Power Company not to be careless. Therefore, there was no duty to warn that the packing blocks must be removed, because only through the grossest negligence could they remain in the transformers. (*McPherson* v. *Buick Motor Co.,* 217 N. Y. 382; *Mather* v. *Rillston,* 156 U. S. 391; *Memphis Consolidated Gas & Electrical Co.* v. *Letson,* 135 Fed. Rep. 969; *Union Light, Heat & Power Co.* v. *Arnston,* 157 Fed. Rep. 540; *Finch* v. *City of Ottawa,* 190 Fed. Rep. 299; *Ennis* v. *Gray,* 87 Hun, 355; *Clarke* v. *Nassau Electric R. R. Co.,* 9 App. Div. 51; *Jones* v. *Union Railway Co.,* 18 App. Div. 267; *Caglione* v. *Mt. Morris Electric Railway Co.,* 56 App. Div. 191; *Ludwig* v. *Metropolitan Street Railway Co.,* 71 App. Div. 210; *Magnolia* v. *Nassau Electric Railroad Co.,* 127 App. Div. 234.) There was no causal connection between the sending out of the transformers in the manner in which they were shipped and the happening of the accident. (*N. B. Lumber Co.* v. *Seattle,* 199 Pac. Rep. 988; *Wohlfahrt* v. *Beckert,* 92 N. Y. 490; *Vosburgh* v. *L. S. & M. C. R. R. Co.,* 94 N. Y. 374; *Cline* v. *N. C. R. R. Co.,* 181 App. Div. 203; *Laidlaw* v. *Sage,* 158 N. Y. 73; *Seifter* v. *Brooklyn Heights R. R. Co.,* 169 N. Y. 254; *Salsedo* v. *Palmer,* 278 Fed. Rep. 94; *Curtin* v. *Somerset,* 140 Penn. St. 70; *Jacobs* v. *N. Y., N. H. & H. R. R. Co.,* 212 Mass. 96; *Olds Motor Works* v. *Shaffer,* 145 Ky. 616.) The plaintiff failed to prove that the blocks in the transformers caused the accident for on

the evidence many things might have caused it and the jury could only guess as did the plaintiff's experts as to what would cause the accident. (*Ruppert* v. *B. H. R. R. Co.*, 154 N. Y. 90; *Lopez* v. *Campbell*, 163 N. Y. 340; *Scharff* v. *Jackson*, 216 N. Y. 598; *White* v. *L. V. R. R. Co.*, 220 N. Y. 131; *Schmidt* v. *M. Brewing Co.*, 221 N. Y. 228; *Francey* v. *Rutland R. R. Co.*, 222 N. Y. 482; *Ford* v. *McAdoo*, 231 N. Y. 155; *Patton* v. *T. & P. Ry. Co.*, 179 U. S. 658.) The release of the Tonawanda Power Company by the trial court was, in effect, an instruction to the jury that the turning of the full power into a new and untested line was not negligent. This was highly prejudicial to the rights of the defendant General Electric Company, and was reversible error. (*Mather* v. *Rillston*, 156 U. S. 391; *Charles* v. *Barrett*, 233 N. Y. 127.) Plaintiff failed to prove any right to recover on behalf of the child for under the Workmen's Compensation Act, section 29, the authority of the state industrial commission is required before an administrator can bring such a suit on behalf of a dependent child and the only cause of action which could exist here was under the Workmen's Compensation Act. (*Travelers' Ins. Co.* v. *Padula Co.*, 224 N. Y. 397; *Cahill* v. *Terry & Tench Co.*, 173 App. Div. 418.)

*Hamilton Ward, William J. Flynn, Philip A. Laing* and *Harold J. Tillon* for plaintiff, appellant and respondent. It is the settled law of this state " if the negligent acts of two or more persons concur in contributing to an accident, the injured person may hold them jointly and severally liable. Where concurrence in causes is charged, the test is simply: Could the accident have happened without their cooperation? " (*McPherson* v. *Buick M. C. Co.*, 217 N. Y. 382; *Shanahan* v. *Empire Engineering Corp.*, 204 N. Y. 543; *Kent* v. *Town of Patterson*, 80 Misc. Rep. 560; *Devoe* v. *New York Central R. R. Co.*, 174 N. Y. 1; *Thomas* v. *Winchester*, 6 N. Y. 397; *Sweet* v. *Perkins*, 196 N. Y. 482; *Donnelly* v. *Piercy Cont. Co.*,

222 N. Y. 210; *Braun* v. *Buffalo G. E. Co.*, 200 N. Y. 484; *Webster* v. *Hudson River R. R. Co.*, 38 N. Y. 260; *Pepe* v. *Utica Pipe Foundry Co.*, 132 App. Div. 458; *Kremer* v. *N. Y. Edison Co.*, 102 App. Div. 433; 186 N. Y. 557.) The negligence of the General Electric Company in placing the blocks in the transformers was not the remote cause of the death of the plaintiff's intestate. It was the proximate cause. (*Glavin* v. *Mayor, etc.*, 112 N. Y. 223; *Sheridan* v. *B. N. T. R. R. Co.*, 36 N. Y. 39; *Pollett* v. *Long*, 56 N. Y. 202; *M., etc., R. Co.* v. *Kellogg*, 94 U. S. 474.) If there was error in releasing the Tonawanda Company, this does not affect the liability of the General Electric Company. (*Reisig* v. *International Ry. Co.*, 190 App. Div. 262.) Plaintiff was not required to prove any election to sue under the Workmen's Compensation Act in behalf of herself or infant child. (*Travelers Ins. Co.* v. *Padula Co.*, 224 N. Y. 397; *Cott* v. *L. V. R. R. Co.*, 189 App. Div. 571; 231 N. Y. 67; *Lester* v. *Otis Elevator Co.*, 169 App. Div. 613.)

*Thomas R. Wheeler* for Tonawanda Power Company, respondent. The defendant Tonawanda Power Company was not negligent. The trial court did not err in directing a verdict in its favor. (*Zimmer* v. *T. A. R. R. Co.*, 36 App. Div. 205; *Ostrander* v. *Hart*, 130 N. Y. 406; *City of Oakland* v. *G. W. Power Co.*, 200 Pac. Rep. 395.)

CRANE, J. The three parties interested in the occurrences involved in this law suit are the Niagara Falls Power Company, the Tonawanda Power Company and the General Electric Company. Only the last two are parties to the litigation.

.The Niagara Falls Power Company generates electricity at Niagara Falls and sells it to Buffalo and Tonawanda. The electricity is carried over cables and in Tonawanda there is a station maintained by the Niagara Falls Power Company through which all the wires pass. Alongside

of this station is the building and plant of the Tonawanda Power Company. On the night of October 31, 1920, an explosion occurred in the power station of the Niagara Falls Company which blew out the place, killing thirteen men. Edwin D. Rosebrock, the intestate, was one of these men.

This action was brought not against the Niagara Falls Power Company but against the General Electric Company and the Tonawanda Power Company, and resulted in a verdict for the plaintiff against the General Electric Company, the judgment on which has been affirmed, one of the justices dissenting.

The plaintiff claims that the negligence of the General Electric Company consisted in shipping to the Niagara Falls Power Company current transformers which contained concealed internal packing blocks, without giving notice to the buyer of the presence of the blocks or notice of the danger that would arise from using the transformers with the blocks in them. The alleged negligence of the Tonawanda Power Company consisted in turning on the full flow of power without testing the lines.

The judgment in this case is against the General Electric Company alone. As to the Tonawanda Power Company, the complaint was dismissed. There seems to be no serious contention by the plaintiff over this dismissal and this portion of the case can be affirmed without further discussion.

I am also of the opinion that there is evidence sufficient to sustain the verdict against the General Electric Company and that the judgment in this particular should also be affirmed.

The facts more in detail are as follows:

The cables from the Niagara Falls Power Company come into the power station where two of them are connected up with transformers to gauge or measure the supply taken by the Tonawanda Power Company. These

cables, as stated above, pass out of the power station on to Buffalo, but at this point Tonawanda taps the electricity for its supply. The wires run from the Power Company station into the adjoining building of the Tonawanda Power Company. The current is so strong as it comes over the cables from Niagara that it cannot be metered — it must be reduced in force. For this purpose the transformers are used. By means of these instruments a secondary current is created which is capable of being metered. The ratio of the reduction in force is known and thus the supply of the heavy current going into Tonawanda is measured by the meter on the lesser current. The transformer is the instrument which the plaintiff claims was defective as delivered and is the basis for her claim of negligence. The transformer was exhibited and explained in court on the argument. Sufficient to say that it consists of primary coils between which, but disconnected from them, are other or secondary coils. The latter become charged by the electric current passing through the primary coils. In this way is produced in the smaller coils the secondary current. These coils are placed in a metal can shaped like an ash can and suspended from the top with four iron braces extending down from the top to which the coils are fastened to make them secure. The coils through which this current passes do not touch the bottom of the can, being about three to four inches above it. In order to insulate the heavy voltage which passes through this instrument the can is filled with insulating oil. It is conceded that all parts of the instrument which are of metal, with one exception, where specially dried wood is used, must be very dry. The least moisture ruins the insulation properties of the oil. In case the insulation breaks down there is apt to be a short circuit. A short circuit occurs where the electric current instead of flowing through the wires, as planned, jumps to some other object and thus returns to the source of supply. This also is called a

leak. The danger consists of course in charging other properties with electricity or in jumping where there is a break causing a spark. It is said in this case that these transformers set up by the General Electric Company were so constructed as to short circuit. Part of the instrument, as sent, had to be removed before using.

The Tonawanda Power Company desired to increase its supply of electricity. The transformers which had been in use were too small to measure the increased voltage. Therefore, two new and larger transformers were purchased from the General Electric Company. They were shipped and installed in the power house at Tonawanda, and on the night of the explosion at about midnight the wires were connected ready for the current to be turned on. When at about two o'clock in the morning the current was turned on, the place blew up.

At the bottom of the transformers or the containers holding the transformers there were blocks of wood two or three inches thick filling the bottom of the can into which were set or fitted the bottom of the coils. These coils were connected at the bottom by a metal band or plate through which the current passed from one to the other, that is, the current passed in on one wire through the transformer and out over the other wire. These blocks were to sustain and keep secure while in transit the coils. It is apparently conceded that it would be unsafe to use the transformers while the blocks of wood were in the containers. The General Electric Company had made transformers for many years without using blocks of wood as here described. In fact, the Niagara Falls Power Company had bought its other transformers from the General Electric Company and had used them as shipped. The General Electric Company considered it necessary to inform purchasers of the danger of using the transformers without removing the blocks and of the necessity of taking them out before turning on the current. This notice was usually given in

four different ways: *First,* by a book of instructions which was sent to the purchaser, attached as I understand it, to the instrument itself when shipped. The book is Exhibit 102 in this case and is entitled " Instruction Book 86019 E." *Second,* by a tag which is not claimed by the defendant to have been on this shipment. *Third,* by a customary caution notice pasted on the outside of the metal container which reads: " Caution. Remove the wooden blocks inside the transformers before connecting it to the circuit." There is conflicting evidence as to this notice. The witnesses for the plaintiff who received the containers in the process of shipping and delivery claim that there was no such cautionary notice on the can. *Fourth,* by the memorandum of shipment received in this instance by the Niagara Falls Power Company from the General Electric Company which contained the following caution printed at the bottom thereof: " Installation and adjustment instructions are attached to apparatus when shipment is made and should be carefully consulted before the apparatus is put into operation." On the top of each transformer were three brass labels. One read: " Current transformer No. 980416, spec. 140969, type S; form K-11; cycles 25 to 125; amp. 100–200; ratio 20–40 to one; 45,000 volt circuit. Important. Do not touch primary coils. Secondary leads must not be open circuited while transformer is in circuit. Meter terminals must not be handled unless secondary leads are grounded. General Electric Co., Schenectady, N. Y., U. S. A." The second tag gives the diagram on the connections, and the third tag says: " These transformers must be filled with oil before the transformer is connected in circuit."

According to the testimony for the plaintiff, when these transformers were received by the Niagara Falls Power Company there was only the metal pieces referred to on the containers and the cautionary notice on the bill of shipment which was filed away by clerks and unseen

by the men installing the apparatus. The tag and the paster were not on the transformers. The Niagara Falls Power Company treated these transformers when received in the same way that it had the two others purchased years before. It filled them with oil and gave them the ratio test. It did not remove the wooden blocks. It did not know they were in the containers.

The whole case turns upon the knowledge which the Niagara Falls Power Company had of the presence of these blocks, or the knowledge which it should have had if it had exercised any care or caution commensurate with its experience.

The evidence seems to indicate that the explosion was due to the presence of these blocks. The blocks were fastened together by nails. The original blocks have been put in evidence. It is said by the experts that the current passed from the coil across the wooden block, burned up a nail, passed through the bottom of the can, burned the copper wire connecting the two transformers causing a spark or flash which ignited the oil vapor and blew up the building and the thirteen men. The degrees of heat caused by this electricity and its effect upon the oil in the can is given as follows: The temperature at the point where the copper was melted was 2,000 degrees Fahrenheit. The oil flashes at 287 degrees and burns at 328 degrees, boils at 464 degrees. Under the influence of heat the oil vaporizes. Oil in the immediate vicinity of the heat vaporizes as it goes into the air. It is then explosive and produces a yellow or reddish flame. The explosion produces great heat and great force.

The men who were killed were burned with oil burns. Some of the men who survived for a few hours died of these oil burns.

As I read the briefs, it is not denied by the defendant but that the explosion could have happened by short circuit through the wooden blocks and the vaporizing

of the oil. It is claimed, however, that the explosion occurred by reason of non-circuiting of the feed wires between the power house and the Tonawanda station. The evidence at most created a question of fact for the jury. The explosion must have taken place inside of the power house, as everything was blown outward, even the walls of the adjoining station being spotted with melted metal and oil. The evidence sustains the claim that the explosion took place because of the blocks of wood in the transformers, and on this evidence the jury have determined that it did so take place. There is sufficient evidence to sustain the jury's finding that the Niagara Falls Power Company did not known that these transformers had in them the wooden blocks. There is also evidence to sustain the finding that the defendant failed to give its usual and cautionary notice or caution regarding this danger.

The proposition of law alone remains: Was the defendant liable for sending out its transformers in this dangerous condition to the Niagara Falls Power Company? The defendant insists that even if there were no notices whatever given to the company about these blocks it should have discovered their presence upon a reasonable inspection. The defendant says the company knew, and its experts knew, that the coils and instruments would have to be perfectly dry. The defendant insists that the power company should have examined the transformers to discover their moist condition, if any, and in so doing would have found the blocks. In view of the brass plates on the transformers, the contents of which are given above, I do not see why the purchaser was bound to take apart the transformer to examine it. It came like a completed instrument with notices about oil and a caution about touching the coils. The company had previously used transformers without examining them. Here was some evidence at least for the jury. I take it that an instrument which may be dangerous and is

generally known to the electrical profession as a danger need not be warned against by a seller. If, for instance, transformers were usually packed with wood as were these, and the electrical trade or experts should have known that such packing was usual and that danger would arise unless the instrument was examined and packing removed, then in such case the General Electric Company would not be negligent in shipping to electric companies or experts the transformers without any instruction or caution. This, however, seems to be a special case. The use of wooden blocks was not general, but limited. The defendant, itself, established the practice of giving a caution — it deemed it necessary. Under these circumstances where the danger from use was likely to be so very disastrous, the rule of law to be applied is that of *Thomas* v. *Winchester* (6 N. Y. 397); *Devlin* v. *Smith* (89 N. Y. 470); *Torgesen* v. *Schultz* (192 N. Y. 156); *Statler* v. *Ray Mfg. Co.* (195 N. Y. 478); *MacPherson* v. *Buick Motor Co.* (217 N. Y. 382). I do not think a distinction can be drawn between a defective instrument and a perfect instrument defectively and dangerously packed if the product when it leaves the manufacturer is in a latently defective condition making it inherently dangerous to all who use it as it is intended to be used. The rule of liability attaches.

Were there errors in the rulings upon the trial?

The defendant claims that the dismissal as to the Tonawanda Power Company was prejudicial to it as a direction to the jury that the turning on of the full power was not negligent. If there had been a breakdown in the wires or installation this might be true. The turning on of full power had nothing to do with the breakdown of the transformers. These were not to be tested by the power company. These had been tested to stand five times the voltage turned on by the power company.

The defendant also claims that the authority of the state industrial commission was required before the

administratrix could bring this action. This is not the law when the claim is against a third party not the employer. (*Lester* v. *Otis Elevator Co.*, 169 App. Div. 613.)

The defendant's counsel made two requests which went to the very root of the entire case. They were these: "I ask the court to charge the jury that the defendant, General Electric Company, is not liable for any accident resulting from any defect which a proper inspection of the transformers by the Niagara Falls Power Company would have disclosed," and again, "I ask the court to charge the jury that if in the use of the care which an ordinarily prudent man would have exercised under all of the existing circumstances, the Niagara Falls Power Company should have discovered and removed the blocks, then the General Electric Company is entitled to a judgment of no cause of action." Both of these requests were refused and exceptions taken by the defendant. In the main charge the very reverse of these requests had been charged. In outlining the negligence claimed by the plaintiff the judge said: "The plaintiff claims that * * * even if they [the Niagara Falls Power Company] did not test the transformers and that the Niagara Falls Power Company was to blame that nevertheless the General Electric Company was to blame, in other words that it was a continuous negligence and the action of the General Electric Company and the Niagara Falls Power Company were concurrent, and that their [General Electric Company] conduct became the proximate cause of this accident." And further he said: "They say that the Niagara Falls employees did examine the labels on the top of the cans and they did put oil in, as directed by the copper labels, and put in transformer oil that stood the test of the ordinary transformer oil used in such transformers, and, therefore, they did all that they were called to do, that was called for them the directions before using, according to the directions of the General Electric

Company, but they do not claim but what the Niagara Falls Power Company was negligent in not examining these transformers further, and even though the Niagara Falls Power Company is negligent the General Electric Company was also negligent if it concurred in and caused this accident, and the only reason that this accident happened was that these blocks were in these cans or in these transformers, and if you find that is true, that these blocks caused this accident, and the General Electric Company was negligent in leaving them there, and did not use ordinary prudence in having them taken out, then this plaintiff is entitled to a verdict."

As to the negligence of the defendant, the court fully instructed the jury that if the use of the blocks were dangerous, but the defendant had been careful and had used ordinary prudence to see that the blocks were taken out before the transformers were used, the defendant was not negligent.

We think this charge of the court and the refusals to charge, as requested, were correct. If under the circumstances of this case the defendant were negligent it was not relieved from liability because the purchaser was negligent in not discovering the negligence or preventing its natural result. We must start, however, with the premise that the defendant was negligent. The charge and the requests to charge assume this. The defendant's negligence in this case, as I have already stated, is dependent upon those dangerous results which the defendant had reason to anticipate because of the extreme and hidden danger contained in the transformers. If transformers, as known to the trade, were generally packed with wooden blocks in shipment, and the defendant had reason to believe that the power company knew this and would take them out, then the defendant would not be liable in selling its transformers without notice regarding the blocking because it would be guilty of no negligence. In determining the defendant's negligence, the jury were

obliged to take into consideration the customary way of selling, packing and shipping transformers, the knowledge of the trade and the inherent danger of the article sold. From these facts, the jury would say whether the defendant was justified in relying upon the purchaser to remove the blocking. In this case there was an inherent danger by reason of the defendant's acts which caused death to many people. Any prudent man could have anticipated such a result. The blocking causing the danger had to be removed. Who was to remove it? The purchaser was to remove it before use. If purchasers generally, according to the custom and trade, knew of the packing and caused its removal, the defendant was not negligent. On the other hand, if the circumstances were special and peculiar, not generally known to the trade, and the seller was negligent in not causing notice of the danger to be brought home to the customer, or shipped the transformers as ready for use, then the fact that the purchaser was also negligent in failing to discover the danger would not relieve the seller. In considering the charge, we must start with the defendant's negligence. That being established, the fact that the negligence of others concurred in the result does not relieve the defendant. (*Wanamaker* v. *Otis Elevator Co.*, 228 N. Y. 192.)

The judgment appealed from should be affirmed, with costs.

HOGAN, CARDOZO and POUND, JJ., concur; HISCOCK, Ch. J., and McLAUGHLIN, J., dissent on ground of errors in charge; ANDREWS, J., not sitting.

Judgment affirmed.