Hector **JIMINEZ** and Dalmy Jiminez, Plaintiffs,

v.

**DREIS & KRUMP MANUFACTURING CO., INC.,** Federal Machinery Corporation, and Bellows International, Inc., Defendants.

**DREIS & KRUMP MANUFACTURING CO.,** Third-Party Plaintiff,

v.

**AURORA ELECTRIC COMPANY, INC.,** Third-Party Defendant.

No. 81 Civ. 3503 (HFW).

United States District Court, S.D. New York.

Nov. 18, 1982.

---

Mark Landesman, by Chana Sklar Israel, Louis M. Atlas, New York City, for plaintiffs.

Kelley, Drye & Warren, by William A. Krohley, Thomas B. Kinzler, Scott I. Batterman, New York City, for Dreis & Krump.

Wilson, Elser, Edelman & Dicker, by James P. Donovan, Robert Kaiser, New York City, for Federal Machinery Corp.

## MEMORANDUM DECISION

WERKER, District Judge.

This is a diversity action in which Hector Jiminez ("Jiminez") seeks to recover damages for personal injuries he sustained while operating a press brake machine. Jiminez's wife has asserted a derivative claim for damages. The matter presently is before the court on the motions of defendants Dreis & Krump Manufacturing Co. ("Dreis & Krump") and Federal Machinery Corporation ("Federal") for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons that follow, the motions are granted.

### FACTS

The machine on which Jiminez was injured was a press brake machine that is used to bend metal. The machine contained a general purpose press brake part that had been manufactured and sold to an unknown entity by Dreis & Krump in 1962. The part apparently passed through several hands until, on January 2, 1973, third-party de-

fendant Aurora Electric Company, Inc. ("Aurora"), Jiminez's employer at the time he was injured, purchased the part from Federal and thereafter incorporated the part into the machine.

The general purpose press brake part manufactured by Dreis & Krump consists of a six-foot long vertically movable ram, an activating device that connects the ram to an electric motor and a bed toward which the ram descends. The ram never comes into direct contact with the bed because a space is left between the ram and the bed for a set of top and lower dies, which together constitute a mold for shaping the metal. The top die is attached to the ram and the lower die is placed on the bed. To bend the metal, the operator positions a piece of metal on the lower die and then activates the ram, which moves downward until the upper die comes into contact with the lower die. The metal is bent by the pressure and force exerted by the ram.

It is the set of dies that gives the general purpose press brake part the capacity to perform a variety of functions. The dies are manufactured in a number of sizes and shapes and may be inserted anywhere along the length of the ram. They also may be changed by the user to perform different tasks at different times. The place where the two dies meet when the ram is activated and the metal is formed is known as the "point of operation." The size, shape and positioning of the dies determines the site of the point of operation. Dreis & Krump manufactured the general purpose brake part without dies and the dies that were being used when Jiminez was injured were neither designed, manufactured nor sold by either Dreis & Krump or Federal.

As originally manufactured by Dreis & Krump, the activating device on the general purpose press brake part was a mechanical foot pedal located under the bed of the machine, eight to ten inches above the floor. To set the ram into action, the operator would have to place his foot on the pedal and exert approximately thirty-five to forty pounds of continuous pressure. This pressure engaged a clutch that caused the mo-

tor to be connected to the ram. The ram would continue to cycle up and down for as long as the operator kept the foot pedal depressed. As soon as the operator released the pedal, however, the ram would stop wherever it was in its cycle.

Sometime in 1973, Aurora altered the part by removing the mechanical foot pedal and replacing it with an electric pneumatic activating device. With this device, the operator could activate the ram by pressing two hand switches. These switches were connected to air valves that allowed compressed air to enter the activating device, connect the motor to the ram and cause the ram to cycle. Aurora installed the electric pneumatic activating device without the assistance, knowledge or consent of Dreis & Krump or Federal.

Jiminez was injured on June 16, 1978 while he was operating the press brake machine at the Aurora plant in Richmond Hill, New York. Apparently, the machine unintentionally recycled when Jiminez had his hands in the die area to remove a finished piece of metal. As a result, Jiminez lost three fingers on his right hand. The complaint alleges causes of action in negligence and strict products liability.

## DISCUSSION

■ The courts of New York, whose law is applicable to the instant litigation, have recognized causes of action in negligence and strict products liability against the manufacturer of a defective product that causes injury. *E.g., Robinson v. Reed-Prentice Div. of Package Mach. Co.,* 49 N.Y.2d 471, 403 N.E.2d 440, 426 N.Y.S.2d 717 (1980); *Codling v. Paglia,* 32 N.Y.2d 330, 298 N.E.2d 622, 345 N.Y.S.2d 461 (1973). As the law has developed in that jurisdiction, a defect may consist of the following: (1) a mistake in manufacturing, *Victorson v. Bock Laundry Mach. Co.,* 37 N.Y.2d 395, 335 N.E.2d 275, 373 N.Y.S.2d 39 (1975); *Codling v. Paglia,* 32 N.Y.2d 330, 298 N.E.2d 622, 345 N.Y.S.2d 461 (1973); (2) improper design, *Robinson v. Reed-Prentice Div. of Package Mach. Co.,* 49 N.Y.2d 471, 403 N.E.2d 440, 426 N.Y.S.2d 717 (1980); *Mical-*

*lef v. Miehle Co., Div. of Miehle-Goss Dexter, Inc.,* 39 N.Y.2d 376, 348 N.E.2d 571, 384 N.Y.S.2d 115 (1976); *Bolm v. Triumph Corp.,* 33 N.Y.2d 151, 305 N.E.2d 769, 350 N.Y.S.2d 644 (1973); or (3) inadequate or no warnings concerning the use of the product. *Torrogrossa v. Towmotor Co.,* 44 N.Y.2d 709, 376 N.E.2d 920, 405 N.Y.S.2d 448 (1978) (per curiam). Plaintiffs' claims are based on the last two categories.

The initial question to be decided is whether, under the facts of this case, the law should impose a duty on the manufacturer of a general purpose press brake part, which later is incorporated into a press brake machine, to equip the part with safety guards to prevent the operator's hands from coming into contact with the point of operation. That question involves an issue of law and must be decided by the court. *Donohue v. Copaigue Union Free School Dist.,* 64 App.Div.2d 29, 33, 407 N.Y.S.2d 874, 877 (2d Dep't 1978) (citation omitted), *aff'd,* 47 N.Y.2d 440, 391 N.E.2d 1352, 418 N.Y.S.2d 375 (1979); W. Prosser, *The Law of Torts* § 37 at 206 (4th ed. 1971). The determination whether one party owes a duty of care to another involves a consideration of several factors, including the ability of the defendant to develop an effective means of preventing the injury. *Donohue v. Copaigue Union Free School Dist.,* 64 App.Div.2d 29, 33, 407 N.Y.S.2d 874, 877 (2d Dep't 1978) (citations omitted), *aff'd,* 47 N.Y.2d 440, 391 N.E.2d 1352, 418 N.Y.S.2d 375 (1979).

■ In designing a product, a manufacturer must use the degree of care that is necessary to avoid an unreasonable risk of harm to those likely to be subjected to danger when the product is used in a normal or reasonably foreseeable manner. *Micallef v. Miehle Co., Div. of Miehle-Goss Dexter, Inc.,* 39 N.Y.2d 376, 348 N.E.2d 571, 384 N.Y.S.2d 115 (1976). The degree of care that is required of the manufacturer is determined by balancing "the likelihood of

harm against the burden of taking precaution against that harm." *Robinson v. Reed-Prentice Div. of Package Mach. Co.,* 49 N.Y.2d 471, 479, 403 N.E.2d 440, 443, 426 N.Y.S.2d 717, 720 (1980) (citations omitted). For example, if the addition of a safety device would interfere with or destroy the functional utility of the product, the manufacturer might not be duty-bound to install the feature. *See, e.g., Micallef v. Miehle Co., Div. of Miehle-Goss Dexter, Inc.,* 39 N.Y.2d 376, 386, 348 N.E.2d 571, 578, 384 N.Y.S.2d 115, 121 (1976).

■ The court finds that Dreis & Krump had no duty to attach point of operation guards to the general purpose press-brake part and that the absence of these safety devices did not render the machine defective when it left the hands of Dreis & Krump. The part was designed to perform a myriad of functions depending upon the size, shape and positioning of the set of dies that shaped the metal. It was the user of the part, however, not the manufacturer, who selected and positioned the dies and thus determined the location of the point of operation. It therefore would be impracticable to require the manufacturer, not knowing the exact site of the point of operation, to design and install an effective point of operation guard that would be compatible with all of the uses to which the user might put the press brake machine.[1] For this reason, as demonstrated by industry standards, it is the custom in the industry for the user to select and insure that machine operators use appropriate point of operation guards. *See* American Nat'l Standard Safety Requirements for the Constr., Care, and Use of Power Press Brakes § 6 (American Nat'l Standards Inst., Inc. 1973); N.Y.Admin.Code tit. 12, §§ 19.3 & 19.8(a) (1963).

■ Plaintiffs argue that Dreis & Krump had a "nondelegable" obligation to incorporate safety guards into the press brake part and that it would be impermissable to shift

---

1. In his deposition testimony, plaintiffs' expert admitted that, until dies are inserted, the press brake part has no known point of operation and that the appropriateness of a particular

point of operation guard would depend upon many factors, including the type of dies being used.

that responsibility to the user of the part. In view of the standards and custom of the industry, however, it was not unreasonable for Dreis & Krump to assume that the user of the part would provide appropriate point of operation guards to protect the safety of its machine operators. While a manufacturer is under a duty to produce a product that is safe at the time of sale, it is not required to equip its product with safety devices that would insure against harm no matter how careless the user might be. *Robinson v. Reed-Prentice Div. of Package Mach. Co.,* 49 N.Y.2d 471, 481, 403 N.E.2d 440, 444, 426 N.Y.S.2d 717, 721 (1980) (citations omitted).

Moreover, it cannot be overlooked that a period of sixteen years elapsed between the time that Dreis & Krump manufactured and sold the press brake part and the accident in which Jiminez was injured. Furthermore, the part apparently passed through several entities before it was incorporated into Aurora's machine. The law should not require the manufacturer to follow its product through every step of the distribution process to insure that every user of the product will comply with industry standards and their responsibilities to their employees.

Thus, the court concludes that, under the circumstances of this case, it would be unreasonable to impose a duty on Dreis & Krump to install point of operation guards to the general purpose press brake part. Rather, in this industry, the obligation customarily is, and legally should be, that of the user. Other courts have reached the same conclusion in similar situations. *See, e.g., Gordon v. Niagara Mach. & Tool Works,* 574 F.2d 1182, 1190 (5th Cir.1978) (per curiam); *Bexiga v. Havir Mfg. Corp.,*

60 N.J. 402, 290 A.2d 281, 284–85 (1972). *But see, e.g., Rhoads v. Service Mach. Co.,* 329 F.Supp. 367 (E.D.Ark.1971). Accordingly, neither strict liability in tort nor liability for negligence may be imposed upon Dreis & Krump on that ground. For the same reason, such liability may not be imposed upon Federal, the entity that sold the part to Aurora.[2]

Even if Dreis & Krump had a duty to attach point of operation guards to the press brake part, the court finds that Aurora's modification of the part was so substantial that neither Dreis & Krump nor Federal may be held liable for plaintiffs' damages. In *Robinson v. Reed-Prentice Div. of Package Mach. Co.,* 49 N.Y.2d 471, 403 N.E.2d 440, 426 N.Y.S.2d 717 (1980), the court held that

> a manufacturer of a product may not be cast in damages, either on a strict products liability or negligence cause of action, where, after the product leaves the possession and control of the manufacturer, there is a subsequent modification which substantially alters the product and is the proximate cause of plaintiff's injuries.

*Id.* at 475, 403 N.E.2d at 441, 426 N.Y.S.2d at 718.

In this case, it is not disputed that Aurora changed the activating device on the press brake part by replacing the mechanical foot treadle with an electric pneumatic activation system. This alteration of the activating device completely changed the very means by which the ram was set into operation. Assuming that the accident occurred as the result of an unintentional recycling of the ram, rather than due to operator misuse or negligence,[3] the only reasonable

---

**2.** The court notes that, even if the question whether Dreis & Krump should have attached point of operation guards to the general purpose press brake part were a question to be decided by the jury, summary judgment still would be warranted. This is so because, in view of the multipurpose nature of the part, the standards and custom of the industry and all of the other facts and circumstances of this case, the court is of the opinion that reasonable men could not infer from the evidence any likeli-

hood of negligence. *See Calvert v. Katy Taxi, Inc.,* 413 F.2d 841, 844 (2d Cir.1969) (citations omitted).

**3.** When considering a motion for summary judgment, the court " 'must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought ....' " *United States v. Bosurgi,* 530 F.2d 1105, 1110 (2d Cir.1976) (quoting *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975)).

conclusion to be drawn is that the recycling was caused by a malfunction in the activating device, which simply was not the same activating system in the press brake part when it left the hands of Dreis & Krump and Federal.

Plaintiffs dispute the significance of the differences in the two activating systems and contend that the activating device installed by Aurora was actually safer because, with that device, as opposed to the mechanical foot pedal, the operator's hand could never come into contact with the point of operation when he was setting the ram into operation. This argument, however, completely misses the point. If, as plaintiffs claim, Jiminez was injured as the result of an unintentional recycling of the ram, the safeguards provided for intentional activation are irrelevant. Moreover, plaintiffs have come forward with no evidence to rebut the logical inference that the unintentional recycling could only have been caused by a malfunction in the activating device installed by Aurora. The court therefore concludes that there is no genuine issue of material fact that Aurora's alteration of the part was "substantial" within the meaning of *Robinson* and that this modification was the proximate cause of Jiminez's injuries. Thus, Dreis & Krump and Federal cannot be held responsible for plaintiffs' damages.

Plaintiffs also claim that the general purpose press brake part was defective because the part contained no warnings concerning the dangers of exposing the operator to the point of operation. It is a well-established rule in New York that the supplier of a product who is or should be aware that the product may be dangerous when used in the usual or expected fashion has a duty to provide the user with adequate warnings of such danger. *E.g., Rosebrock v. General Elec. Co.,* 236 N.Y. 227, 140 N.E. 571 (1923); *Lancaster Silo & Block Co. v. Northern Propane Gas Co.,* 75 App.Div.2d 55, 427 N.Y.S.2d 1009 (4th Dep't 1980);

*Young v. Elmira Transit Mix, Inc.,* 52 App. Div.2d 202, 383 N.Y.S.2d 729 (4th Dep't 1976). The supplier, however, has no duty to warn of dangers that are either obvious or known to the user. *E.g., Rosebrock v. General Elec. Co.,* 236 N.Y. 227, 140 N.E. 571 (1923); *Lancaster Silo & Block Co. v. Northern Propane Gas Co.,* 75 App.Div.2d 55, 427 N.Y.S.2d 1009 (4th Dep't 1980); *McDaniel v. Williams,* 23 App.Div.2d 729, 257 N.Y.S.2d 702 (1st Dep't 1965) (per curiam). Furthermore, since the supplier has no duty to warn a purchaser who knows of the dangers of the product, it similarly has no duty to warn employees of the purchaser. *Littlehale v. E.I. du Pont de Nemours & Co.,* 268 F.Supp. 791 (S.D.N.Y.1966), *aff'd per curiam,* 380 F.2d 274 (2d Cir.1967).

In this case, it is clear that the dangers involved with exposure to the point of operation not only were obvious, but also were known by Aurora, Jiminez's employer. Indeed, in his deposition testimony, Jiminez stated that he was aware of the dangers of placing one's hands within the point of operation. The court therefore finds that neither Dreis & Krump nor Federal had any duty to affix a warning to the general purpose press brake part advising operators of the dangers associated with exposure to the point of operation.[4]

## CONCLUSION

For the reasons discussed above, the motions of Dreis & Krump and Federal are granted, and the complaint is dismissed as against them on the merits. There being no just reason for delay, Dreis & Krump and Federal are directed to submit a final judgment on notice within ten (10) days after the entry of this order.

SO ORDERED.

4. The court by no means suggests that Aurora similarly was under no obligation to provide its employees with adequate instructions concern-
ing the perils of coming into contact with the point of operation and what procedures should be followed to avoid such an incident.