Hector JIMINEZ and Dalmy Jiminez,
Plaintiffs-Appellants,

v.

DREIS & KRUMP MANUFACTURING
CO., INC. and Federal Machinery
Corp., Defendants-Appellees,

and

Bellows International, Inc., Defendant.

FEDERAL MACHINERY CORP.,
Third-Party Plaintiff,

v.

AURORA ELECTRIC COMPANY, INC.,
Third-Party Defendant.

DREIS & KRUMP MANUFACTURING
CO., INC., Third-Party Plaintiff,

v.

AURORA ELECTRIC COMPANY, INC.,
Third-Party Defendant.

No. 946, Docket 82–7961.

United States Court of Appeals,
Second Circuit.

Argued March 7, 1984.

Decided June 4, 1984.

Robert Kaiser, New York City (James P. Donovan, Meryl R. Lieberman, and Wilson, Elser, Edelman & Dicker, New York City, on the brief), for defendant-appellee Federal Machinery Corp.

Before TIMBERS and CARDAMONE, Circuit Judges, and TENNEY,* District Judge.

TIMBERS, Circuit Judge:

Appellant Hector Jiminez [1] appeals from a summary judgment entered November 30, 1982 in the Southern District of New York, Henry J. Werker, *District Judge*, 552 F.Supp. 301, dismissing a diversity products liability action brought to recover damages sustained June 16, 1978 as the result of the amputation of three fingers of the right hand of appellant while employed by Aurora Electric Company, Inc. (Aurora) and while operating a machine containing a press brake part manufactured by appellee Dreis & Krump Manufacturing Co., Inc. (Dreis & Krump) and sold to Aurora by appellee Federal Machinery Corp. (Federal).

For the reasons stated below, we reverse and remand for trial.

I.

The following description of the machine press involved is believed necessary to an understanding of our rulings on the legal issues raised.

The press, which is used to bend metal, contains a six-foot vertically movable ram which descends onto a bed. A top die is selected and attached to the ram. Likewise, a lower die is selected and attached to the bed. To bend a piece of metal, the operator positions a piece of metal on the lower die and then activates the ram. The ram descends and the metal is bent when the upper die forces the metal against the lower die. The dies are manufactured in a

Sanford F. Young, New York City (Mark Landesman, Chana Sklar Israel, and Young & Young, New York City, on brief), for plaintiffs-appellants.

Hebert Rubin, New York City (John A. Schultz, David B. Hamm, Barbara D. Goldberg, and Herzfeld & Rubin, P.C., New York City, on the brief), for defendant-appellee Dreis & Krump Mfg. Co., Inc.

* Honorable Charles H. Tenney, Senior United States District Judge, of the United States District Court for the Southern District of New York, sitting by designation.

1. Hector's wife, Dalmy, also appeals from the dismissal of her derivative claim for damages. Since the only issues on appeal relate to the claims of Hector regarding the occurrence of the accident, we shall refer in this opinion to "appellant" in the singular. Of course the damage claims of Dalmy, as well as those of Hector, are preserved to be asserted at the trial which we order.

variety of shapes and sizes. They can be inserted anywhere along the length of the ram. The size, shape, and positioning of the dies determine where they meet. This site is known as the "point of operation".

The press also has an activating device that connects the ram to an electric motor. As originally manufactured by Dreis & Krump, the activating device was a mechanical foot pedal. Continuous operator pressure on the pedal engaged a clutch which operated the motor. This resulted in the ram being cycled up and down as long as the pressure was maintained. In 1973, Aurora removed the foot pedal activating device and replaced it with an electric pneumatic activating device. Using the new device, the operator activated the ram by simultaneously pressing two hand switches. The switches were connected to air valves that allowed compressed air to enter the activating device, bringing the motor into contact with the ram and causing the ram to cycle.

Appellant was injured on June 16, 1978 when the press unintentionally [2] recycled at a time that appellant had his hands at the point of operation to remove a finished piece of metal.

On June 5, 1981, appellant commenced the instant action seeking damages for his injuries. He alleged claims of negligence and strict products liability. Specifically, he claimed (1) that the press should have been equipped with a guard mechanism to prevent operator injury when the press was cycling and (2) that the press should have been accompanied by a warning of unintentional recycling and of the hazard of operating the machine without a guard mechanism.

Appellant moved for summary judgment, relying on pleadings, affidavits including exhibits, and depositions. In opposition to the motion, appellant relied on pleadings, depositions and affidavits, especially the affidavit of an expert regarding the cause of the accident and the guard devices available for the press. In an opinion dated November 18, 1982, the court granted appellees' motion for summary judgment, holding (1) that Dreis & Krump had no duty to attach point of operation guards; (2) that, even if Dreis & Krump had such a duty, the alteration of the activating device was so substantial a modification that appellees could not be liable; and (3) that appellees had no duty to affix warnings to the press because the dangers were obvious and known by Aurora and appellant. *Jiminez v. Dreis & Krump Manufacturing Co., Inc.*, 552 F.Supp. 301 (S.D.N.Y. 1982).

Following dismissal of the complaint, appellant retained a new expert and moved to vacate the judgment pursuant to Fed.R. Civ.P. 60(b). In an opinion dated September 19, 1983, the court denied the motion. From the judgment entered on the court's opinion of November 18, 1982 and the order denying the Rule 60(b) motion, this appeal has been taken.

## II.

In moving for summary judgment, it is "incumbent upon movant to establish to the Court's satisfaction the absence of a genuine issue of fact.... In essence, then, the Court is obligated to search the record and independently determine whether or not a genuine issue of fact exists." *Higgins v. Baker*, 309 F.Supp. 635, 639 (S.D.N.Y. 1970), *cited in* 10A Wright, Miller & Kane, Federal Practice and Procedure § 2739, at 527 (1983). We hold that the court erred in concluding that no genuine issue of material fact was presented by the record.

▮▮▮▮ Under the New York law of strict products liability, a manufacturer breaches its duty to market safe products when it produces and sells a product designed so that the product was not reasonably safe. *Voss v. Black & Decker Manufacturing Co.*, 59 N.Y.2d 102, 107, 450 N.E.2d 204, 208, 463 N.Y.S.2d 398, 402 (1983). The

---

**2.** Unintentional recycling occurs when the machine cycles without triggering by reason of malfunction as opposed to accidental recycling where someone triggers the activation device through error or inadvertence.

focus of the "not reasonably safe" analysis of *Voss* (decided after the district court's November 18, 1982 decision in the instant case) is whether the utility of the product is outweighed by the risk inherent in marketing a product designed in that manner. A plaintiff is under an obligation to present evidence that it was feasible to design the product in a safer manner. *Id.* at 109, 450 N.E.2d at 208, 463 N.Y.S.2d at 402. Here, appellant's expert stated that there were guards that could have been installed at the time of manufacture which would have resulted in a safer press. Appellant therefore established the existence of a genuine issue of material fact regarding whether there was a type of guard which might have, and should have, been installed by Dreis & Krump at the time of manufacture.

The court sustained appellees' claim that the multifunctional capabilities of the press would make it impracticable to require the manufacturer to install an effective point of operation guard compatible with all possible uses of the machine. In support of this conclusion, the court relied on the industry custom to have the *user* (presumably the employer) select appropriate point of operation guards and to insure that machine operators use them. In view of this custom, the court found that it was not unreasonable for Dreis & Krump to assume that Aurora would provide appropriate guards. The court therefore held that the absence of a safety device did not render the machine defective when it left the hands of Dreis & Krump. Such analysis may well be sound. The point here, however, on an appeal from the grant of summary judgment, is that such analysis should have been left to the jury.

It is true that manufacturer-installed safety guards probably would have limited the utility of the press. But loss of utility is only one of the many factors that may be presented to the jury to consider when it performs the balancing analysis. *Voss v. Black & Decker Manufacturing Co., supra,* 59 N.Y.2d at 109, 450 N.E.2d at 208–09, 463 N.Y.S.2d at 402–03; *Micallef v. Miehle Co., Division of Miehle-Goss Dexter, Inc.,* 39 N.Y.2d 376, 386, 348 N.E.2d 571, 577–78, 384 N.Y.S.2d 115, 121 (1976). Industry custom and state regulations would be other factors for the jury to consider. Under the facts of this case, evidence of user responsibility to provide the guards—according to custom or regulation—should not have been dispositive, as a matter of law, as to whether the press was "reasonably safe" when it left the hands of the manufacturer.[3]

### III.

The court's alternative ground for granting summary judgment was that, despite any duty to guard that the manufacturer or seller arguably had, Aurora's modification of the machine—replacement of the mechanical foot pedal activating device with the electric pneumatic activating device—was so substantial that neither Dreis & Krump nor Federal could be held liable to appellant. The court held that appellant had not come forward with any evidence to rebut the logical inference that the unintentional recycling could have been caused only by the new activating device.

In applying New York law, we have held that the relationship between a substantial alteration to a machine and the causation of the injury is a jury question. *E.g., Mazzi v. Greenlee Tool Co.,* 320 F.2d 821 (2 Cir.1963). More recently, the New York

---

**3.** Judge Learned Hand expressed this principle well:

> "Indeed in most cases reasonable prudence is in fact common prudence; but strictly it is never its measure; a whole calling may have unduly lagged in the adoption of new and available devices. It never may set its own tests, however persuasive be its usages. Courts must in the end say what is required; there are precautions so imperative that even

their universal disregard will not excuse their omission."

*The T.J. Hooper,* 60 F.2d 737, 740 (2 Cir.), *cert. denied,* 287 U.S. 662 (1932). *See also Murphy v. L & J Press Corp.,* 558 F.2d 407, 410–12 (8 Cir.1977), *cert. denied,* 434 U.S. 1025 (1978) (industry custom and Occupational Health and Safety Act regulation placing sole or shared duty to guard on user of press machine not dispositive of manufacturer's duty to guard).

Court of Appeals has refined the "substantial alteration" doctrine in *Robinson v. Reed-Prentice Division of Package Machinery*, 49 N.Y.2d 471, 403 N.E.2d 440, 426 N.Y.S.2d 717 (1980). In that case, after the manufacturer delivered the machine, the employer cut a hole in the safety guard to enable the operator to feed materials into the machine on a continuous line. The employee was injured when his hand was pulled through the hole in the guard. In reversing the judgment for plaintiff, the court held

> "a manufacturer of a product may not be cast in damages, either on a strict products liability or negligence cause of action, where, after the product leaves the possession and control of the manufacturer, there is a subsequent modification which substantially alters the product and is the proximate cause of plaintiff's injuries."

49 N.Y.2d at 475, 403 N.E.2d at 441, 426 N.Y.S.2d at 718.

 While the rule in *Robinson* need not be limited to an alteration to a safety device, we hold that, under the facts of this case, it should not have been applied in granting summary judgment. The affidavit of appellant's expert was sufficient to raise a question of fact as to whether the injury was caused by a failure in the pneumatic activating device or by a mechanical failure in the clutch, brake, or other machine part. In short, the proximate cause of the injury was a disputed fact. Since the *Robinson* "substantial alteration" doctrine exculpates a defendant only where the alteration clearly was the proximate cause of the injury, we hold that summary

judgment was inappropriate as the court's alternative ground for its decision.

### IV.

The court also held that neither Dreis & Krump nor Federal had any duty to affix a warning to the press concerning dangers associated with exposure to the point of operation. The court sustained appellees' claim that the dangers were obvious and known by Aurora and appellant.

 Under New York law a supplier has no duty to warn users of a product of its dangers if they are obvious or well known. *Billiar v. Minnesota Mining and Manufacturing Co.*, 623 F.2d 240, 243 (2 Cir.1980); *Rosebrock v. General Electric Co.*, 236 N.Y. 227, 240–41, 140 N.E. 571, 575 (1923). Here, in seeking to avoid liability as a matter of law, appellees invoked the right test but to the wrong danger. It is obvious that injury will result from placing one's hands in a press *intentionally* or *accidentally* activated. The danger presented here, however, was that the press would recycle *unintentionally* and injure the hands of an operator who had not activated the machine. This danger was not obvious as a matter of law. *Gordon v. Niagara Machine & Tool Works*, 574 F.2d 1182, 1186 (5 Cir.1978).

 Likewise, a supplier cannot be held liable for failure to warn a user who is aware of the dangers inherent in a product. *Billiar v. Minnesota Mining and Manufacturing Co., supra*, 623 F.2d at 243; *Rosebrock v. General Electric Co., supra*, 236 N.Y. at 236, 140 N.E. at 573. Appellees claim that appellant admitted in his deposition that he was aware of the danger.[4] Appellant asserts that he admitted knowledge of the general danger of placing

---

**4.** Appellant testified as follows:

Q. Mr. Jiminez, at the time of your accident did you know that if you placed your hand between the top and bottom dies on the machine on which you were working on the night you were injured, and the machine cycled, that your hand would be severely injured?

A. How was I able to take out or remove the piece?

Q. No. Listen to my question. Did you know on the night you were injured and with

respect to the machine you were working on, that if you placed your hand on the bottom die and somebody cycled the machine, that most likely your hand would be cut off?

A. That is logical, of course.

Appellees argue that it is irrelevant that the question hypothesizes that "somebody cycled the machine" rather than that "the machine unintentionally cycled." The distinction, however, is at the heart of an unresolved question of fact regarding the type of danger or dangers of which appellant was aware.

his hand in a machine that had been intentionally activated, but that he did not admit knowledge of the danger caused by unintentional recycling. The extent of appellant's knowledge presented a question of fact which made summary judgment inappropriate on the issue of duty to warn.

What happened in the district court strikes us as simply this: the conscientious court, mindful of the four year delay since the occurrence of the accident, tried to cut to the core of the case by finding certain facts to be undisputed as a matter of law and ruling on that basis that appellees were not liable. In so doing, as we have indicated above, the court erred in making findings where there were genuine issues as to material facts; and the court further erred, with respect to the second prong of Fed.R.Civ.P. 56(c), in holding that appellees as the moving parties were entitled to judgment as a matter of law when they were not. We therefore reverse and remand for trial.[5]

Costs to appellants on this appeal.

The mandate shall issue forthwith.

Reversed and remanded for trial.

---

**5.** In view of our disposition of the case, we find it neither necessary nor appropriate to rule upon the district court's denial of appellant's Rule 60(b) motion.

We also find it inappropriate to impose sanctions or attorneys' fees upon appellees, as requested by appellants.