Jones, J.
We hold that it was error for the courts below summarily to have declared unconstitutional an amendment to the Zoning Ordinance of the City of Long Beach which, while leaving undisturbed a general restriction to single-family use, expressly permitted continuation of prior existing two-family uses. We conclude that this case should have proceeded to trial.
Because of the summary disposition at Supreme Court, the record before us is very meager. It appears, however, that an imprecisely described area in the east end of the City of Long Beach had been zoned for many years for single-family dwellings only. The housing units in the area had originally been built as summer residences. Over the decades many of these units had been winterized and various owners had converted their dwellings to two-family occupancy, concededly in violation of the then existing zoning ordinance. On November 4, 1970 the city adopted the presently challenged amendment. Without changing the general limitation to single-family residential use, the amendment expressly permitted the continuation of two-family dwelling structures existing prior to the date of enactment of the amendment which met specified requirements and for which a certificate of compliance was obtained within six months.
Respondent is the owner of a dwelling within the affected district, construction of which dwelling was completed on October 15, 1970. A certificate of occupancy for one-family use was issued on November 5, 1970, one day after adoption of the challenged zoning amendment. Predicated on an allegation that on November 3, 1970 he had entered into a lease for occupancy of a second apartment in the dwelling, in January, 1971, respondent sought a certificate of compliance with respect to his property. His application was denied and on appeal the denial was affirmed by the zoning board of appeals. Thereupon respondent instituted two proceedings, an article 78 proceeding to review the determination of the zoning board of appeals and a declaratory judgment action seeking a declaration that the amendment of the zoning ordinance to permit *386 continuation of prior two-family occupancy was unconstitutional. Answers were filed by the city in both actions and the parties stipulated that the actions be tried jointly by the court without a jury.
Thereafter, without either party having moved for accelerated judgment and no hearing having been had or evidence introduced, Supreme Court handed down a decision granting respondent a declaration that the zoning amendment was unconstitutional and dismissing the article 78 proceeding. The Appellate Division affirmed, without opinion. We reverse and send the case back for trial.
In argument, though of course without the benefit of supporting evidentiary proof since it was denied an opportunity to introduce such proof, the city contends that it was confronted with an unusual problem and thus a special responsibility in the area of municipal land-use planning. For some decades there had been a failure on the part of municipal authorities or others to enforce the single-family zoning restriction. It appears that by 1970 approximately 100 of a total of 300 premises affected were actually being used for two-family dwellings in violation of the zoning ordinance. The city asserts that it acted to resolve what it perceived to be acute problems which would flow from continued disregard of its zoning regulation. The city was faced with a dilemma. On the one hand it contends that it could not have acted strictly to enforce the general one-family use restriction; to have done so would have resulted in the ouster of some 100 families. On the other hand conversion of the entire area to two-family use would have been impracticable. The lots in the area are approximately 40 feet by 60 feet, the streets are narrow, total two-family use would have intolerably exacerbated traffic and parking conditions and the drain on municipal services would have surpassed capacity. In sum density considerations precluded resort to the alternative of total conversion to two-family use.
The lower court in its summary disposition in the declaratory judgment action apparently concluded that as a matter of law the means adopted here by the city for solving its particular planning problem were unconstitutional no matter what proof the city might adduce. The doctrine of permitted nonconforming uses appears to have been extrapolated to support the quite different and substantively inconsistent proposition that selective permission may never be given for the continua *387 tion of a prior illegal use no matter how great the planning predicament or how reasonable the selection criteria. We cannot subscribe to any such categorical conclusion.
In our view, the principles involved in the recognition of nonconforming uses have little, if any, bearing in this instance. "The doctrine of vested nonconforming uses sprang from the reluctance of courts to give to zoning ordinances a retroactive effect which would destroy substantial, existing property rights; had they been necessarily construed to such effect, they would have been held confiscatory and hence unconstitutional.” (2 Rathkopf, Law of Zoning and Planning, 58-1.) That the courts look with disfavor on zoning regulations which would foreclose an existing, theretofore legal use surely does not compel the conclusion that a zoning regulation which permits an existing, but theretofore illegal use must be held invalid. By the application of the doctrine of nonconforming uses the courts have recognized the implicit right of a property owner to continue to use his property as he has been doing in the past. Here the City of Long Beach, seeking the same objective, granted property owners the explicit right to continue the prior use. We do not think it significant, or certainly controlling, that in the former instance the prior use had been in conformity with zoning requirement, while in the latter it was in tolerated violation of zoning regulation. The doctrine of nonconforming use is invoked to limit the application of a restrictive zoning ordinance; here by contrast the issue is the validity of an amendment which enlarges permitted uses.
The validity of this zoning amendment must turn, on whether, in the totality of the circumstances facing this community, the legislative choice as to the conditions to be attached to reclassification of certain theretofore nonpermitted but existing uses was reasonable. In approaching that question it is cardinal to recognize that a "decision as to how a community shall be zoned or rezoned, as to how various properties shall be classified or reclassified, rests with the local legislative body; its judgment and determination will be conclusive beyond interference from the courts, unless shown to be arbitrary, and the burden of establishing such arbitrariness is imposed upon him who asserts it.” (Rodgers v Village of Tarrytown, 302 NY 115, 121.)
That the reclassification here works to the economic advantage of some individual property owners who, as prior viola *388 tors of the zoning ordinances, may appear undeserving, while withholding a corresponding advantage from prior law-abiding homeowners cannot in and of itself be deemed dispositive. "Every restriction on the use of property entails hardships for some individual owners. These difficulties are invariably the product of police regulation and the pecuniary profits of the individual must in the long run be subordinated to the needs of the community. * * * The fact that the ordinance limits the use of, and may depreciate the value of the property will not render it unconstitutional, however, unless it can be shown that the measure is either unreasonable in terms of necessity or the diminution in value is such as to be tantamount to a confiscation”. (Matter of Golden v Planning Bd. of Town of Ramapo, 30 NY2d 359, 381, app dsmd 409 US 1003 [emphasis supplied].) Nor does the fact that the ordinance reclassifies prior unlawful uses to be hereafter lawful necessarily demonstrate arbitrariness. "What is mandated is that there be comprehensiveness of planning, rather than special interest, irrational ad hocery. The obligation is support of comprehensive planning, not slavish servitude to any particular comprehensive plan. Indeed sound planning inherently calls for recognition of the dynamics of change.” (Matter of Town of Bedford v Village of Mount Kisco, 33 NY2d 178, 188.)
Thus the determination as to the reasonableness of this ordinance must necessarily be made in the context of the factual setting to which it was addressed. As we stated in Golden (supra, p 378) "What segregates permissible from impermissible restrictions, depends in the final analysis upon the purpose of the restrictions and their impact in terms of both the community and the general public interest (see Euclid v. Ambler Co., 272 U. S. 365, 387, supra). The line of delineation between the two is not a constant, but will be found to vary with prevailing circumstances and conditions (see, e.g., Euclid v. Ambler Co., 272 U. S. 365, 387, supra; Rodgers v. Village of Tarrytown, 302 N. Y. 115, supra).”In the present case, the judgment of invalidity having been rendered without trial the city has impermissibly been denied opportunity to present evidence of "the prevailing circumstances and conditions” to which the 1970 amendment was directed and on the basis of which its reasonableness must be determined.
Accordingly, the order of the Appellate Division should be reversed and the case remitted to Supreme Court for a trial on the merits in the declaratory judgment action.