Louise KERR, Individually and as Guardian Ad Litem for Eva Kerr, an Infant, Plaintiff,

v.

Ronald KOEMM, Esther Koemm & Sadie C. Rodo, Defendants.

Ronald KOEMM and Esther Koemm, Defendants and Third-Party Plaintiffs,

v.

Paul KERR and Ford Motor Company, Third-Party Defendants.

No. 79 Civ. 5312 (PNL).

United States District Court, S.D. New York.

Feb. 8, 1983.

---

Laurence R. Bailey, Jr., of Walker & Bailey, New York City, for Louise Kerr.

Michael S. Washor of Shapiro, Shiff, Beilly, Rosenberg & Fox, New York City, for Donald and Esther Koemm.

Grubbs, Alio & Donovan, New York City, for defendant Sadie C. Rodo.

Marvin V. Ausubel and Thomas Lopez of Trubin, Sillcocks, Edelman & Knapp, New York City, for Ford Motor Co.

Paul Kerr, pro se.

## OPINION AND ORDER

LEVAL, District Judge.

Eva Kerr, a three-year-old child, was injured in an accident involving a tractor driven by her father Paul Kerr, a farm worker, and owned by his employers, the Koemms. This diversity action in tort was brought on Eva's behalf by her mother Louise Kerr against the Koemms and against Sadie C. Rodo, the owner of the land on which the accident took place.

The Koemms, as third-party plaintiffs, sued Eva's father Paul Kerr and Ford Motor Company, the maker of the tractor. Plaintiffs have asserted no claim against either third-party defendant. Ford moves for summary judgment, and Paul Kerr moves to dismiss. Ford's motion is granted. Paul Kerr's motion is denied.

Paul Kerr, a resident of Florida, did seasonal farm work in New York for the Koemms on their property and on adjacent property leased by the Koemms from Rodo. The 1977 harvest was Kerr's fourth in the Koemms' employ. In the course of harvesting apples and pears, Kerr frequently used the Koemms' tractor. Koemm's father had purchased the tractor from the manufacturer, the Ford Motor Company, about twenty years before the accident. In the intervening years it was serviced mainly by Koemm (who has engineering training), using the original owner's manual for reference. It was never serviced by Ford or any representative of Ford. Koemm Deposition, Ford's Exhibit H, at 23–30.

On September 20, 1977, Kerr was driving the tractor in the performance of his duties. Although the tractor had only one seat, Kerr took his wife, three-year-old Eva and another daughter, six-year-old Lorna, riding on it. Eva rode standing on a kind of running board, a horizontal plate about seven inches wide and two feet long, located near the clutch pedal at the driver's left

foot, in front of the wheel and about halfway up it. She was holding onto her father's shirt. It appears Eva frequently rode perched in this fashion. According to the Kerrs' testimony, they were on an uphill grade when the tractor pitched back, throwing both daughters off. Eva was run over by the left rear wheel and suffered serious injuries.

The Kerrs and Koemms dispute the facts concerning the practice of riding the children on the tractor. The Kerrs testify that they did it regularly and that the Koemms knew about it and either approved, acquiesced or at least failed to warn against it. The Koemms testify that they had warned the Kerrs against the practice and did not realize it was still being done. The Kerrs also claim that the mother worked alongside the father, with the Koemms' knowledge, and that the children helped them work; the Koemms state that they expected only the father to work.

The plaintiffs claim that the Koemms' negligence was responsible for the accident. In particular, they claim that the Koemms permitted the dangerous practice of riding the children on the tractor, failing to warn the Kerrs against it. They also claim that the tractor was dangerous for the use to which it was put.

The third-party claims at issue are claims for indemnity or contribution by the Koemms against Ford and against Paul Kerr, in the event the Koemms are found liable to plaintiffs. "[U]nder New York law a party seeking contribution must prove that the party from whom contribution is sought is at least partially responsible for the accident." *Robinson v. Shapiro,* 646 F.2d 734, 739 (2d Cir.1981). *See D'Ambrosio v. City of New York,* 55 N.Y.2d 454, 450 N.Y.S.2d 149, 435 N.E.2d 366 (1982).

█ New York law recognizes three types of defect which may give rise to a manufacturer's liability for injury from his product: mistake in manufacturing, improper design, and inadequate warnings to users. *Robinson v. Reed-Prentice Division,* 49 N.Y.2d 471, 478–79, 426 N.Y.S.2d 717, 720, 403 N.E.2d 440 (1980). Third-party

plaintiffs assert all three as grounds for relief from Ford in the event they are held liable to the plaintiff. They claim that plaintiff may show defects of manufacturing or design of the tractor, and they charge that Ford is responsible for failing to warn of the danger of riding more than one person on the tractor. These claims are in strict liability. *Robinson, supra.* The legal standard to be applied to each is whether the manufacturer acted reasonably. *Lancaster Silo & Block v. Northern Propane Gas,* 75 A.D.2d 55, 427 N.Y.S.2d 1009, 1013–14 (4th Dept.1980); W. Prosser, The Law of Torts 644 (4th ed. 1971). Summary judgment, of course, should not be granted without caution. *Cf.* 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2729; 6 Moore's Federal Practice ¶ 56.17[42]. Nonetheless, those opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). They have not done so.

## THE DESIGN OF THE TRACTOR

The Koemms claim that they would have a right of contribution or indemnity from Ford if plaintiffs show that the tractor had a defect of design or construction for which Ford must share responsibility. The plaintiffs allege simply that the tractor was defective because "the front portion of said tractor would shoot up or rise in the air without notice." Plaintiff's Answers to Interrogatories, No. 83(i). As against the Koemms, plaintiffs claim that Koemm should have affixed weights to the front of the tractor. In response to Ford's summary judgment motion, however, both the Koemms and the plaintiffs stand on the naked allegation that the tractor reared up. They have advanced no specific theory or allegation of defectiveness. Plaintiffs, responding to the Ford motion although having made no claim against Ford, expressly disavow any intention to introduce expert testimony or any other facts beyond a recitation of how the accident happened. Koemm did hire an expert, who concluded

there were no defects in the tractor. Ford's Exhibit K, Report of Mr. Zamparo.

Plaintiffs and the Koemms each cite cases to show that defective design can be found on circumstantial evidence and without expert testimony. In *Jackson v. Melvey*, 56 A.D.2d 836, 392 N.Y.S.2d 312 (2nd Dep't 1977), the court affirmed a jury finding against an auto maker for a defect "absent expert testimony [or] competent direct evidence of a defect," 392 N.Y.S.2d at 314. In *Codling v. Paglia*, 32 N.Y.2d 330, 345 N.Y.S.2d 461, 298 N.E.2d 622 (1973), the Court of Appeals affirmed a jury verdict against an auto maker although no specific defect had been proved. As the *Jackson* court noted, however, "each case must be judged on its own facts," 392 N.Y.S.2d at 314. The circumstances that permitted a jury to infer a manufacturer's defect in those cases are wholly absent here.

■ The *Jackson* court relied particularly on the fact that the car was only three weeks old at the time of the accident and had already been serviced once for a steering problem similar to that involved in the accident. It also noted that the complete destruction of the car prevented expert examination of its steering mechanism. The *Codling* case involved a four-month-old car, and the court there relied on the driver's testimony that he tried to steer the car to the right and could not. Here the facts of the accident carry no strong circumstantial inference of a manufacturing or design defect. Moreover, the tractor is available for examination and testing, which plaintiffs expressly decline to perform. But most important, the tractor was at least twenty years old, and had never been serviced by Ford. These facts do not permit submission of the question whether the manufacturer of the tractor made or designed it without reasonable care. *See Gates v. Ford Motor Company*, 494 F.2d 458 (10th Cir.1974).

Neither the Koemms nor the plaintiffs have shown that material facts exist to be tried on a theory of defective design or manufacture.

## FORD'S FAILURE TO WARN

The second claim is that Ford may be liable for failure to warn of the danger of riding extra passengers on the tractor. New York case law on the duty to warn is "rather sparse," *Billiar v. Minnesota Mining and Manufacturing Co.*, 623 F.2d 240, 243 (2nd Cir.1980), but its general outlines are clear enough. *See generally Lancaster Silo & Block Co. v. Northern Propane Gas Co.*, 75 A.D.2d 729, 427 N.Y.S.2d 1009, 1015 (1st Dep't 1980); *Jiminez v. Dreis & Krump Manufacturing Co.*, 552 F.Supp. 301, 2 Prod. Liab.Rep. (CCH) ¶ 6436, at 22,912 (S.D.N.Y. 1982). One court stated the rule as follows, citing § 388 of the Restatement (Second) of Torts:

> a supplier is subject to liability where the supplier has reason to know that the product he furnishes is likely to be dangerous for the use for which it is supplied; has no reason to believe the user will realize its dangerous condition; and fails to exercise reasonable care to inform the user of the facts which make the product dangerous.

*Young v. Elmira Transit Mix, Inc.*, 52 A.D.2d 202, 383 N.Y.S.2d 729, 731 (4th Dep't 1976).

■ The issue of duty to warn divides into two questions: duty to warn the owner and duty to warn future potential drivers. It is clear that any duty Ford may have had to warn the *owners* of its tractors cannot be the basis of liability here. For Koemm has testified, and the other parties do not dispute it, that he knew the practice of riding passengers on the tractor was dangerous. Warning Koemm would not have increased his awareness of the danger. Ford's failure to warn him was not a proximate cause of Eva Kerr's injury. *Torrogrossa v. Towmotor Co.*, 44 N.Y.2d 709, 405 N.Y.S.2d 448, 449, 376 N.E.2d 920 (1978) (failure to warn is not proximate cause where the warning would not have prevented the accident). Put another way, Koemm falls within the so-called "knowledgeable user" exception, which relieves a manufacturer of his duty to warn where the user was in fact aware of the product's dangerous nature. *Billiar*

*v. Minnesota Mining and Manufacturing Co.,* 623 F.2d 240 (2nd Cir.1980).

The knowledgeable user exception involves a subjective test: whether the particular user was aware of the danger. *McDaniel v. Williams,* 23 A.D.2d 729, 257 N.Y.S.2d 702 (1st Dep't 1965); *Rosebrock v. General Electric,* 236 N.Y. 227, 140 N.E. 571 (1923). Since there is uncontested and clear evidence that Koemm knew of the danger, summary judgment is appropriate. *Jiminez, supra.*

The remaining issue is thus whether Ford had a duty to warn future drivers of the tractor, as opposed to the owner, that riding extra passengers could be dangerous. Ford argues first that it is entitled to summary judgment because as a matter of law it was not required to foresee this particular danger attendant on use of its tractor. While a maker is "entitled to assume that his product will be put to a normal use," Restatement § 395, Comment (j), it may be that, as plaintiff contends, a maker of tractors should be aware of the likelihood that farm children will come into contact with tractors and perhaps be carried on them. Third-party plaintiff's expert witness so concluded in his report (Ford's Exhibit K). *But see Meyer v. Gehl Co.,* 36 N.Y.2d 760, 368 N.Y.S.2d 834, 329 N.E.2d 666 (1975) ("the manufacturer was under no duty to foresee that a child of tender years ... would have been present in and endangered by the type of farm machine involved").

I find it unnecessary to decide on the ground of foreseeability of such misuse, however, because even if this use of a tractor was one Ford should have foreseen, the danger is so obvious that Ford has no duty to warn against it.

■ The rule that a manufacturer has no duty to warn of an obvious danger is well established. The duty to inform users of a danger exists "if, but only if, [the supplier] has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved." Restatement (Second) of Torts, § 388, comment (k), cited in *Lancaster Silo & Block, supra,* 427 N.Y.S.2d at 1015 n. 1; *Young, supra,* 383 N.Y.S.2d at 731 (citing the text of Restatement § 388).

■ Plaintiffs and the Koemms contend that the obviousness of the danger is a contested issue of fact as to which summary judgment is inappropriate. The parties have not brought out any direct evidence on the Kerrs' knowledge of the danger. But unlike the knowledgeable-user doctrine, discussed above, the inquiry into the obviousness of the danger does not turn on the actual knowledge of the user. It turns rather on whether the danger was sufficiently obvious that it would be unreasonable to impose on the manufacturer a duty to warn. The Restatement tests cited in *Young* and in *Lancaster Silo & Block* limit a supplier's duty to those dangers as to which it "has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition." [1] The issue is the reasonableness of the maker's judgments about whether users will perceive the danger, and it is an objective question.

■ The danger here is so apparent and so clearly within common knowledge that Ford had no duty to warn future drivers. While in many cases the question might go to the jury, here any jury verdict against the manufacturer based on this evidence would need to be set aside. *See Robinson v. Shapiro,* 646 F.2d 734, 739 (2d Cir.1981) (directed verdict for third-party defendant in negligence case). It is undisputed that

---

1. As to design defects, New York law has removed this limitation; even a patent danger is subject to a manufacturer's duty to exercise reasonable care in designing the product. *Micallef v. Miehle,* 38 N.Y.2d 386, 384 N.Y.S.2d 115, 348 N.E.2d 571 (1976). The duty to warn, however, has not undergone a parallel change.

Nor does the rationale for eliminating the patent danger rule on design defects apply to the duty to warn. Obviousness should not relieve manufacturers of the duty to eliminate dangers from their design if that can reasonably be done, but obviousness relieves the manufacturer of a duty to inform users of a danger.

the driver had his three-year-old child standing on the running board, hanging onto his shirt as they rode a bumpy path over orchard land. The dangers to which this exposed the child are so many, so grave and so apparent that no warning to avoid it can reasonably be required.[2]

> There are on the market vast numbers of products as to which the law holds the manufacturer to a duty to warn of foreseeable dangers or to provide safeguards against such dangers. But there are also on the market vast numbers of potentially dangerous products as to which the manufacturer owes no duty of warning .... A manufacturer cannot manufacture a knife that will not cut or a hammer that will not mash a thumb or a stove that will not burn a finger. The law does not require him to warn of such common dangers.

*Jamieson v. Woodward & Lothrop*, 247 F.2d 23, 25–26 (D.C.Cir.1957), *cert. denied*, 355 U.S. 855, 78 S.Ct. 84, 2 L.Ed.2d 63 (1957); W. Prosser, The Law of Torts 649 (4th ed. 1971).[3]

On the present record, there is no material issue of fact to be tried that could lead to liability for Ford, and Ford is therefore entitled to summary judgment. The Koemms raise the possibility that evidence not yet identified by the plaintiffs might surface in the trial which might give rise to a liability of the Koemms for which they should have a right of indemnity or contribution. Although this is indeed a theoretical possibility, it is highly unlikely. Since discovery is terminated, the case is ready for trial and plaintiffs have as yet identified no such evidence, it is most doubtful whether plaintiff would be permitted to spring a new undisclosed theory over the Koemms' objection. A mere theoretical possibility of this nature is not sufficient reason to require Ford to incur the considerable expense of standing trial when the existing evidence after the close of discovery includes nothing which could impose liability on it. In any event the Koemms are sufficiently protected against this theoretical problem by the possibility of obtaining relief from the judgment under Fed.R. Civ.P. 60(b) so as to allow a subsequent action.

### PAUL KERR'S MOTION TO DISMISS

Paul Kerr's *pro se* motion to dismiss presents his contentions on a number of factual disputes with the Koemms. These disputes are to be resolved at trial. If the jury accepts his factual contentions, it will find in his favor. But since those contentions are disputed, there is no basis for dismissal.

SO ORDERED.

---

**2.** Another approach to demonstrate of unacceptability of a rule requiring such warning would be to consider how the manufacturer could discharge the obligation. The warning to the driver would presumably have to be by some plaque or notice affixed to the tractor. It would need to include not only the danger of riding infants on the running board, as in this case, but all other equally foreseeable practices which were equally dangerous with equal obviousness. The list of foolish practices warned against would be so long, it would fill a volume. It is difficult to imagine how, as a practical matter, the manufacturer could effectively transmit such a warning to the future drivers of the tractor.

**3.** *DiCarlo v. Ford Motor Company*, 77 A.D.2d 643, 430 N.Y.S.2d 137 (2nd Dep't 1980), is not to the contrary. Although the absence of a warning there was among four grounds stated for reversing a dismissal at the close of plaintiff's case below, the court did not discuss the issue of obviousness. Furthermore the danger involved in the misuse in that case was far less obvious than here.