**Scott HUTTON, Patricia Hutton, Plaintiffs,**

v.

**GLOBE HOIST CO., Dresser Wayne Petroleum, Dresser Industries, Inc., Defendants.**

**No. 99 CIV. 11712(CBM).**

United States District Court, S.D. New York.

Aug. 29, 2001.

**372**

Barry R. Strutt, Keegan, Keegan & Strutt, LLP, White Plains, NY, Counsel for Plaintiff.

Glen Silverstein & Helen Chung, Leader & Berkon, LLP, New York, NY, Counsel for Defendants.

*OPINION*

MOTLEY, District Judge.

*MEMORANDUM OPINION*

Plaintiffs Scott and Patricia Hutton sued defendants Dresser Equipment Group (incorrectly sued as Dresser Wayne Petroleum and Dresser Industries, Inc.) ("Dresser") and Globe Hoist Co. ("Globe"), for damages incurred when a car fell from a lift, manufactured by defendants, on plaintiff Scott Hutton, crushing him. The case was initially filed in New York State Court and was removed to this court on December 1, 1999. On April 16, 2001, defendant Dresser filed the instant motion for summary judgment.

The complaint alleges several theories of liability.[1] However, plaintiffs state in their memorandum of law in opposition to Dresser's motion for summary judgment that the only theory of liability they are pursuing is the failure to warn claim. As set forth below, because plaintiffs have failed to establish a genuine issue of material fact as to whether Dresser had a duty to warn of the dangers associated with the lift in question, Dresser's motion for summary judgment is granted.

## I. Facts

Scott Hutton was a mechanic at the Roe Park Service Station (the "Station") in Peekskill, New York where the accident occurred. The Station uses a hydraulic vehicle lift consisting of a hydraulic cylinder, out of which rises a metal pillar. Movable arms, with pads attached to the ends, extend perpendicular to the pillar. The operator of the lift positions the pads under the vehicle to be lifted. As the

1. Count I of the complaint alleges that defendant was negligent in failing to provide adequate safety devices. Count II alleges that defendant was negligent in failing to provide a warning of the hazards of using the lifts. In addition, Count III of the complaint pleads a defective products claim. Finally, Count IV is Patricia Hutton's claim for loss of consortium.

vehicle is raised, it is supported upon the pads. The Station purchased the lift in 1957. The lift was manufactured by defendant Globe. Defendant Globe no longer exists. Dresser acquired all of Globe's assets and liabilities in 1965. Dresser continued to manufacture identical and/or similar single-post lifts until 1992, when it sold the assets of Globe. By the terms of the 1992 asset transfer, Dresser retained all liability for claims accruing prior to the transfer.[2]

On January 29, 1999, Hutton and another mechanic, Robert Grant, were servicing a 1987 Nissan Stanza with a starter problem (the "Stanza"). Grant and the manager of the Station, Michael Hines, moved the Stanza over the lift. Grant then positioned the lift arms and pads under the Stanza and raised it slightly to check the balance of the car. The Stanza appeared to be properly balanced, so Grant raised the Stanza to the lift's full height. Hutton then began to work under the car with Grant. As Hutton pulled the starter cable located near the front of the Stanza, Grant felt the Stanza move forward. Grant stepped out from underneath the Stanza and screamed that the car was moving. Hutton attempted to run away from the Stanza, towards the front of the car and the wall of the garage. The Stanza fell forward and landed on Hutton's body.

Grant, a mechanic of thirty years, has testified that he properly loaded the Stanza. The Occupational Safety and Health Administration ("OSHA") inspected the lift and found that failure of the lift was not the cause of the accident. The Station resumed using the lift and has continued to use the lift on a daily basis without incident.

Plaintiffs have submitted evidence going to two possible warnings they claim would have prevented Hutton's accident. First, plaintiffs have submitted a pamphlet entitled "Lifting it Right," prepared by the Automotive Lift Institute ("ALI"). The pamphlet provides, *inter alia*, instructions for evasive action to be taken by a person working under a car in the event of the car falling off the lift. In particular, the pamphlet instructs the mechanic to "[r]un in the opposite direction of the fall, but not toward the wall, work bench, or other area that might trap you between that object and the car." Dresser, a member of ALI, distributed the pamphlet to purchasers of new lifts after 1987 but did not distribute the pamphlet to prior purchasers. Second, plaintiffs have submitted the report of a safety expert, William Brogan, stating that a person working under a car should run toward the center post of the hydraulic lift to avoid a falling car.

Finally, plaintiffs contend that, based upon, *inter alia*, Dresser's experience and participation in ALI, Dresser was aware that there was a particular danger of a front-heavy vehicle slipping off of the kind of lift in question. Plaintiffs have submitted sales literature and installation manuals from Dresser, not passed on to Dresser's customers, which indicate that the lift should not be used to lift vans and trucks. The Stanza was not a van or a truck. However, it was a front-wheel drive with most of the weight placed in the front of the vehicle, as is the case with vans and trucks. At the time the lift was manufactured, most cars had the weight evenly

---

2. As one of its defenses, Dresser claims that because the lift was manufactured 40 years ago by an acquired subsidiary, there is no basis for holding Dresser liable. Because plaintiffs have failed to produce evidence rais-ing an issue of material fact as to whether a warning would have prevented Hutton's injuries, this court declines to address the issue of Dresser's liability as Globe's successor.

distributed throughout the frame. Grant, the mechanic who loaded the Stanza, has testified in deposition that he was aware that the Stanza was a front-wheel drive car with most of the weight distributed towards the front. Grant further testified that he was aware that front-heavy vehicles needed to be positioned differently on the lift, knew the proper techniques for positioning such vehicles and, indeed, properly positioned the Stanza.

## II. Discussion

Plaintiffs claim that a modern front-heavy car is more likely to fall off a lift than a car with the weight evenly distributed. Through its participation in ALI, plaintiff claims, Dresser became aware of the danger that modern cars might fall off the lift. Therefore, plaintiffs claim, Dresser should have provided a warning to operators of the lift informing them of the possibility that a car might fall off the lift and instructing them: (1) to run in the opposite direction of a fall; (2) not to run toward obstacles; and/or (3) to run towards the center post of the lift.[3]

The standard for summary judgment is that "[u]ncertainty as to the true state of any material fact defeats the motion." *Gibson v. Am. Broad. Companies,* 892 F.2d 1128, 1132 (2d Cir.1989). The movant must demonstrate the absence of a genuine issue of material fact. If the movant carries this burden, the burden then shifts to the non-moving party to produce concrete evidence sufficient to establish a genuine unresolved issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265

(1986); *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988). The court then must view the facts in the light most favorable to the non-movant and give that party the benefit of all reasonable inferences from the evidence that can be drawn in that party's favor. *See Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000). The court neither weighs evidence nor resolves material factual issues but only determines whether, after adequate discovery, any such issues remain unresolved because a reasonable factfinder could decide for either party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Gibson,* 892 F.2d at 1132. However, neither conclusory statements, conjecture, nor speculation suffice to defeat summary judgment. *See Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996).

In New York, to survive a motion for summary judgment on a defective products claim, a plaintiff must demonstrate by a preponderance of the evidence that (1) the product is defective because it is not reasonably safe at the time it was manufactured and sold; (2) the product was used for a normal purpose; (3) the defect was a substantial factor in causing the plaintiff's injuries; (4) the plaintiff, by the exercise of reasonable care, would not have both discovered the defect and apprehended its danger; and (5) the plaintiff could not have otherwise avoided the injury by exercise of ordinary care. *See Urena v. Biro Mfg. Co.,* 114 F.3d 359, 363 (2d Cir.1997); *Voss v. Black & Decker Mfg. Co.,* 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450

---

**3.** Plaintiffs allude to, but never clearly argue, a claim that Dresser should have provided a warning or instructions as to proper placement of the lift arms and pads underneath a front-heavy car. However, Grant and Hines have testified in deposition that they were aware that front-heavy cars needed to be loaded differently and were already trained in the proper techniques. Therefore, as plaintiffs have not clearly set forth what additional warning as to loading they allege would have prevented Hutton's accident, the court declines to address this possible claim.

N.E.2d 204, 206 (1983). A product may be defective because the manufacturer failed to provide adequate warnings regarding dangers associated with the product. *See Fane v. Zimmer, Inc.,* 927 F.2d 124, 128 (2d Cir.1991) (*citing Voss,* 463 N.Y.S.2d 398, 450 N.E.2d at 206).

Dresser's motion for summary judgment is based on the theory that plaintiffs have not carried their burden in establishing that a failure to warn was a substantial factor in causing Hutton's injury. First, Dresser argues that the testimony of plaintiffs' expert, William Brogan, should be excluded because Brogan is not qualified and does not have an adequate basis for his opinions. Second, Dresser claims that, because the dangers resulting from a car falling off the lift are obvious, plaintiffs cannot establish that the lack of a warning was a proximate cause of the accident.[4]

### A. Plaintiffs' Expert Report

Dresser asserts that the testimony and report of plaintiffs' expert, William Brogan, should not be admitted. Plaintiffs have submitted no evidence, other than Brogan's testimony, to support the theory that a warning to run towards the center post could have prevented this accident. Dresser argues that Brogan is not an expert in automotive lifts, has not conducted any tests in connection with this case, has no experience or training with automotive lifts and that Brogan's testimony is speculative in that he does not know the cause of the accident. Finally, Dresser also claims that Brogan's contention that a lift operator should run towards the center post is incorrect. Dresser claims that running towards the center post would be more dangerous than running away from the car.

■■■ It is appropriate for district courts to decide the admissibility of expert testimony on a motion for summary judgment. In determining the admission and the qualification of experts, the district court has broad discretion. "[I]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed.R.Evid. 702.

■■■ In *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court held that the district court should ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.,* at 591, 113 S.Ct. 2786. The *Daubert* Court set forth an inexhaustive list of the criteria the district court may consider in evaluating the testimony of an expert. The court may consider, *inter alia:* (1) whether the expert's theory or technique can be, and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory has been generally accepted. *See id.,* at 591–93, 113 S.Ct. 2786. In *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Court expanded the inquiry to include the question "whether this particular expert has sufficient specialized knowledge to assist the [factfinder] in deciding

---

**4.** Dresser also moves for summary judgment on the basis that even if Dresser had provided a warning, Hutton would not have seen it. Because plaintiffs have failed to produce evidence raising an issue of material fact as to whether a warning would have prevented Hutton's injuries, this court declines to address the issue of whether Hutton would have seen a warning.

the particular issues in the case." *Id.*, at 145, 119 S.Ct. 1167.

■ Based on the *Daubert* standard, this court concludes that Brogan's report and testimony, setting forth the theory that running toward the center post is generally a safer alternative and/or would have prevented this accident, must be excluded. Brogan's curriculum vitae indicates that he is well qualified on the subject of workplace safety; he is a registered professional safety engineer and has worked in the field of workplace safety since 1971. Nevertheless, plaintiffs have presented no evidence that: (1) Brogan has tested his theory; (2) any other safety professionals have reviewed or tested the theory; (3) Brogan has determined a rate of error; or (4) other safety professionals have accepted (or even discussed) the theory. Brogan gives no indication as to the bases of his theory. Based on the evidence presented by plaintiffs, this court can only conclude that Brogan's theory is mere conjecture.

Plaintiffs note that the *Daubert* factors are neither exclusive nor dispositive. *See Zuchowicz v. United States*, 140 F.3d 381, 386–87 (2d Cir.1998). Plaintiffs argue that this court should consider Brogan's theory because "disputes as to the strength of [an expert's] credentials, faults in his ... methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility of his testimony." *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir.1995). However, in this case, plaintiffs have not presented any evidence at all of methodology, textual authority or other support of the center-post theory for this court to weigh. Mere conjecture, even that of an expert, does not suffice to defeat summary judgment. *See Kulak*, 88 F.3d at 71. Therefore, this court excludes Brogan's center-post theory.

### B. Proximate Causation

■ Plaintiffs claim that even if Brogan's center-post theory is excluded, Dresser still had a duty to give lift operators the warning contained in the ALI pamphlet. Plaintiffs claim that a warning instructing Hutton to run in the opposite direction from the fall and away from obstacles would have prevented Hutton's injuries. Dresser responds that it had no duty to warn because the lack of a warning was not a proximate cause of the accident. First, Dresser claims that the danger of using the lift and evasive techniques were obvious. Second, Dresser claims that Hutton was a knowledgeable user of the lift.

■ In duty to warn cases, New York recognizes two circumstances that preclude a finding of proximate cause between warning and accident: obviousness and knowledgeable user. *See Andrulonis v. U.S.*, 924 F.2d 1210, 1222–23 (2d Cir.1991). A manufacturer has no duty to warn of an obvious danger that could or should have been recognized as a matter of common sense. *See Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 677 N.Y.S.2d 764, 700 N.E.2d 303, 308 (1998); *Bazerman v. Gardall Safe Corp.*, 203 A.D.2d 56, 609 N.Y.S.2d 610, 611 (N.Y.App.Div.1994). In addition, if the plaintiff's testimony shows that he or she was aware of the danger to the extent that a warning cannot increase his awareness of its presence, and the warning would not have prevented the harm, a failure to warn cannot be the proximate cause of the injury. *See Andrulonis*, 924 F.2d at 1222–23; *Kerr v. Koemm*, 557 F.Supp. 283, 287 (S.D.N.Y.1983).

This court finds that plaintiffs have failed to raise any question as to either the obviousness, or Hutton's knowledge of, the danger in the event of a fall off the lift. The possibility that a large object balanced on a post may fall from that post is obvious. Moreover, by his own deposition tes-

timony, Hutton was aware of the possibility that vehicles sometimes fall off the lift and can cause serious damage. Finally, running away from the direction of the fall and away from obstacles is so obvious as to be intuitive. As the dangers associated with a car falling off the lift and the ways to avoid those dangers are obvious, and as Hutton was knowledgeable about those dangers, plaintiffs have failed to establish a genuine issue of material fact as to whether a warning could have prevented Hutton's injuries.

## III. Conclusion

For the foregoing reasons, defendant's motion for summary judgment is **GRANTED.**

**SO ORDERED.**