**Rose RYPKEMA and Ted Rypkema, Plaintiffs,**

v.

**TIME MANUFACTURING COMPANY, Defendant.**

**Time Manufacturing Company, Third–Party Plaintiff,**

v.

**Butler Services, Inc., f/k/a Butler Fleet Services, Third–Party Defendant.**

**Time Manufacturing Company, Second–Third Party Plaintiff,**

v.

**Savvy Systems Ltd., Second Third–Party Defendant.**

No. 01 Civ. 4534(RWS).

United States District Court, S.D. New York.

May 20, 2003.

Shafran, Mosley, New York, NY (Howard E. Shafran, of counsel), for plaintiffs.

Lester, Schwab, Katz & Dwyer, New York, NY (Scott L. Haworth, of counsel), for Defendant Time Manufacturing.

O'Connor, Redd, Gollihue & Sklarin, White Plains, NY (Mary E. Mohnach, of counsel), for Second Third–Party Defendant Savvy Systems Ltd.

## OPINION

SWEET, District Judge.

Defendant Time Manufacturing Company ("Time") has moved under Rule 56, Fed.R.Civ.P., to dismiss the complaint of plaintiff Rose Rypkema and Ted Rypkema

("Rypkema") (collectively, the "Rypkemas") alleging product liability. Third-party defendant Savvy Systems, Ltd. ("Savvy") has cross-moved to dismiss the third-party complaint of Time. For the reasons set forth below, the motion of Time is granted.

### Prior Proceedings

The complaint in this action was filed on April 16, 2001, in the Supreme Court of the State of New York, County of New York, and removed to this Court on May 29, 2001. The complaint alleges three causes of action—personal injury, breach of warranty, and strict products liability arising out of an injury suffered by Rypkema while operating a "Versalift," a telescopic boom lift manufactured by Time and attached to a truck operated by Bell/Atlantic Nynex, the employer of Rypkema, now known as Verizon.

Time filed its second third-party complaint against Savvy on May 7, 2002, alleging negligence in the maintenance of the boom lift operated by Rypkema.

Discovery has taken place, including expert discovery and the pretrial order has been filed. The instant motion seeking to dismiss the complaint for failure of proof in view of the inadmissibility of the testimony of Nicholas Bellizzi P.E. ("Bellizzi"), the Rypkemas' expert, and the cross-motion of Savvy were marked fully submitted on May 7, 2003.

Although styled by Time as a motion for summary judgment under Rule 56, Fed. R.Civ.P., to dismiss the Rypkemas' complaint, Time's motion is bottomed on an application under Rules 104 and 702, Fed. R. Evidence, to exclude Bellizzi's expert testimony under the principles enunciated in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and *Kumho Tire Co., Ltd. v.*

*Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). In the absence of Bellizzi's evidence, it is Time's position that there is insufficient evidence to sustain the Rypkemas' complaint warranting summary judgment.

### The Facts

The facts are drawn from the Local Rule 56.1 Statement of Time,[1] an affidavit of Bellizzi, and certain of the discovery as set forth in Plaintiffs' Memorandum in Opposition.

On September 28, 2000, Rypkema, an experienced cable splicer, was assigned to a slicing repair job in Brooklyn by his employer Verizon. The performance of his duties required using an aerial lift truck. Time manufactured the aerial lift bucket which was fitted onto the GMC Verizon truck by Time's authorized dealer, Baker.

According to Rypkema, he sought to enter the bucket from the approach designed into the rear of the aerial lift truck, and while using the top portion of the bucket door as a hand hold to hoist himself up, the bucket door opened and he fell to the ground below as a consequence of which he suffered injuries. Time has attempted to obscure this fact, but Rypkema has always been consistent as to how this accident took place. Specifically, Rypkema testified that he had to hold the bucket door for leverage and he felt the jolt of the door popping open.

After Rypkema suffered his injury a co-worker used the aerial lift truck and operated the bucket latch without incident. Bellizzi did not examine or test the latch.

Time's expert, Marc Recard ("Recard"), did examine the latch, and determined that it was fully functional, years after the incident. Rypkema testified that he is unsure of whether he actually felt the latch give

---

1. No counter statement was submitted by the Rypkemas.

way at all, and that he did not hear a snap, crack or other sign of latch failure.

Rypkema's co-worker, Charles McCloskey ("McCloskey"), testified that he was able to use the latch immediately post-incident. Verizon records show no evidence of any post-incident repair to this latch.

Bellizzi's report stated that the latch design was improper; that a different latch would have prevented the accident; that a hand hold depicted in photographs should have been on the product at the time of the incident, and would have prevented the accident; and that Time should have provided installation instructions for the subject latch. Bellizzi did not propose an alternative design for the latch but testified, "One cannot design the subject latch differently, they need to use a different latch." Bellizzi has not tested a proposed alternative latch, or know of an alternative latch that is in use. Bellizzi did not simulate or reconstruct the accident and has not seen a report of a latch failure, a picture of a broken latch, or a repair record for a broken latch. Bellizzi testified that if his theory of latch failure were correct, the latch would have had to have been adjusted before the truck could be used again.

The latch in question is a quarter turn type latch. There is a tongue and a catch plate. Metal makes contact with metal, and the door is held locked by friction. The handle outside the bucket changes position when the door is locked, allowing the operator to discern whether he or she has locked the door. The latch must be engaged to lock the door and disengaged to open the door.

### The Testimony of Bellizzi Is Excluded

In *Kumho Tire*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238, the Supreme Court confirmed that a district court's "gatekeeper" obligation [2] extends not merely to "scientific" experts, but to "engineering" and "technical" experts as well. The Supreme Court held:

> Disciplines such as engineering rest upon scientific knowledge. Pure scientific theory itself may depend for its development upon observation and properly engineered machinery. And conceptual efforts to distinguish the two are unlikely to produce clear legal lines capable of application in particular cases.

*Id.* at 148, 119 S.Ct. 1167.

The Court went on to state:

> We conclude that *Daubert's* general principles apply to the expert matters described in Rule 702. The Rule, in respect to all such matters, "establishes a standard of evidentiary reliability." *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786. It "requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 592, 113 S.Ct. 2786. And where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question, . . . the trial judge must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Id.*

*Kumho Tire*, 526 U.S. at 149, 119 S.Ct. 1167.

Besides the expert's qualifications, the Court in *Kumho* considered the methodology employed by the expert, the scientific basis for the analysis, and range of reasonable difference between experts.

Bellizzi is a licensed professional engineer with experience and training in bio mechanical engineering principles and is

---

**2.** *Daubert v,* 509 U.S. 579 at 589–91, 113 S.Ct. 2786.

qualified to testify. He examined the following materials in order to render his opinions:

1. The owner's manual;
2. Specifications and drawings for the paddle latch which was originally fitted to the bucket as well as specifications and drawings of the modified latch and door;
3. Photographs of the subject truck as it existed at the time of the plaintiff's fall with the sole exception of the added handle;
4. Photographs of an exemplar Time Versa Lift truck with a hand rail that is substantially higher than the hand rail on the subject truck;
5. An exemplar door and latch;
6. The vehicle repair history of the subject truck; and
7. Deposition testimony of Time's product manager, the third party defendant Savvy, and the deposition of the plaintiff.

He did not examine the bucket or the latch at issue and performed no tests. His report and supplemental report stated his conclusions:

1. That the latch design was improper;
2. That a different latch would have prevented the accident;
3. That a black handle depicted in photographs should have been on the product at the time of the incident;
4. That the subject black handle, if in place, would have prevented the accident;
5. That Time should have provided installation instructions for the subject later; and
6. That alternative handrails should have been provided with the subject bucket truck.

He testified at deposition that:

- He never sketched an alternative design;
- "One cannot design the subject latch differently, they need to use a different latch.";
- He has not done any testing on a proposed alternative latch, and does not know if anyone else is using/has used an alternative latch;
- He did not test to determine the weight that the subject door/latch could hold;
- He did not obtain information on the body characteristics of the plaintiff;
- He did not try to simulate or reconstruct the accident;
- He has not seen a report of a latch failure, a picture of a broken latch, or a repair record for a broken latch;
- He did not inspect the subject latch, bucket, door, or truck;
- If his theory of latch failure were correct, the latch would have had to have been replaced before the truck could be used again;
- He has not done any experiments or reconstruction of the accident whatsoever;
- He does not know, and did not test to determine, how much force plaintiff exerted on the subject door.
- He has not seen a bent or deformed latch, or a photograph of one taken from the subject vehicle;
- He did not study/test to ascertain how much force would typically be exerted on such a door/latch in the field under normal circumstances.
- He is unaware of any design standard violated by Time relative to the product and incident.

■ Under New York law, in a design defect case a plaintiff is required to prove the existence of a feasible alternative which would have prevented the accident. *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 108, 463 N.Y.S.2d 398, 402, 450 N.E.2d 204 (1983) ("The plaintiff, of course, is under an obligation to present evidence that ... it was feasible to design the product in a safer manner."); *Liz v. William Zinsser & Co.*, 253 A.D.2d 413, 414 676 N.Y.S.2d 619, 620 (2d Dep't 1998) (holding that the action should have been dismissed "as the plaintiffs failed to demonstrate that it was feasible to design the product in a safer manner."). There are two means of satisfying this burden:

1. Plaintiff's expert can show, through testing and construction of a prototype, that such an alternative design is within the realm of practical engineering feasibility, thereby demonstrating the utility, cost, safety, sanitation and other characteristics of the proposed alternative; and/or

2. Plaintiff's expert can identify makers of similar equipment who have already put into use the alternative design that has been proposed.

■ Bellizzi has not reconstructed the accident, and has not proposed an alternative design for the subject latch. Nor has he evaluated the feasibility of an alternative latch, given any opinion concerning how an alternative latch would have prevented the accident, nor shown the use of an alternative latch in the marketplace.

When asked about alternative latch designs at his deposition, Bellizzi testified:

Well, there are all different latches. There are different terminology. They're all off-the-shelf items. Some latches you might consider a deadbolt, you could have had a deadbolt latch. That is one. Another is a crane bolt ...

However, Bellizzi is unaware of any manufacturer of competitive equipment that uses a deadbolt or crane bolt to latch a bucket. Bellizzi testified concerning a latch allegedly utilized by Altec, a spring-loaded latch, which he claims would be preferable to the subject latch, but did not test any proposed alternative latch.

As this Court has explained, "In analyzing the reliability of an expert's testimony, the 'key question' is 'whether it can be (and has been) tested.'" *Colon v. BIC USA, Inc.*, 199 F.Supp.2d 53, 75 (S.D.N.Y. 2001) (quoting *Daubert*, 509 U.S. at 593, 113 S.Ct. 2786). This is especially true in the area of engineering, where products must be practical. Thus, "[a]dherence to engineering standards of intellectual rigor almost always requires testing of a hypothesis if the expert cannot point to an existing design in the marketplace." *Id.* at 76.

In *Brooks v. Outboard Marine Corp.*, as here, the plaintiff's expert proposed to testify concerning alternative designs that were utterly untested and untired and had never been put into application by any competitive manufacturer, or by the expert himself. 234 F.3d 89 (2d Cir.2000). The Second Circuit held that "[t]he failure to test a theory ... can justify a trial court's exclusion of the expert's testimony." *Id.* at 92. *See also Colon*, 199 F.Supp.2d at 77 (excluding the testimony of an expert who "has not developed or tested prototypes of lighters embodying his alternative designs"); *Jaurequi v. Carter Mfg. Co., Inc.*, 173 F.3d 1076, 1084 (8th Cir.1999) (rejecting an expert's testimony on an alternative design when he "has not attempted to construct or even draw the suggested device, much less test its utility as a safety device or its compatibility with the corn head's proper function"); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991–92 (5th Cir. 1997) (excluding testimony of a qualified expert who failed to conduct tests); *Cum-*

*mins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir.1996) (holding that guesswork, even educated hunches by qualified experts is not enough, and evidence must be "genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist.").

Bellizzi's alternative latch designs begins with a mechanism which is concededly utilized in connection with other products, such as crane latches or deadbolt latches. Bellizzi has done no engineering work, or considered what problems might be encountered in the field, with these alternative latches.

As this Court held in *Colon*, "While conjecture by a qualified expert is worthy of careful attention, the courtroom is not the place for scientific guesswork, even of the inspired sort. The axiom that law lags behind science but does not lead it, applies equally to proposed engineering innovations in a design defect case." 199 F.Supp.2d at 75–76 (quotations and citations omitted). *See also Golod v. Hoffman La Roche*, 964 F.Supp. 841, 861 (S.D.N.Y. 1997) (same); *Stanczyk v. Black & Decker Inc.*, 836 F.Supp. 565, 567 (N.D.Ill.1993) ("[T]he history of engineering and science is filled with finely conceived ideas that are unworkable in practice."). Thus, to advance a reliable hypothesis, an expert is required to ascertain feasibility, to test alternative designs, and to address the engineering factors and tradeoffs that go into the design of a product for distribution in the marketplace.

Bellizzi's report also relies upon the addition of a vertical handle at the right side of the bucket door as a hand hold for the operator. However, Bellizzi did not try to simulate or reconstruct the accident, nor did he perform anthropomorphic analysis. Accordingly, Bellizzi lacks the ability to provide any testimony concerning whether this hand hold would have prevented the injury to Rypkema. In addition, a factual issue exists as to the presence of the handle at the time of the incident, Rypkema recalling it was not installed, his supervisor recalling to the contrary. For these purposes the presence of the handle will be assumed. However, the Rypkemas are required to demonstrate that the subject product was not reasonably safe for its intended use, before the issue of a feasible alternative design is even addressed. *Voss*, 59 N.Y.2d 102, 107, 463 N.Y.S.2d 398, 402, 450 N.E.2d 204.

Here, the Bellizzi report is bereft of any engineering methodology, no scientific basis is offered for the conclusions reached, and the report is opposed by an equally qualified expert who had performed tests on the product at issue. The Bellizzi report therefore is simply a flat opinion lacking scientific or engineering basis and as such is excluded under Rule 702.

### Summary Judgment Is Appropriate

At the outset it should be noted that the Local Rule 56.1 Statement by Time is unrebutted. Also, the elements of the accident are undisputed expect to the existence of the vertical handle which is not relevant for the reasons set forth above, and the reason that the door to the bucket came open, the Rypkemas contending the latch was defective, Time contending that Rypkema was negligent.

It is undisputed that the door and latch were operated safely after the incident, that no defect requiring repair was reported, and that no repair was made. On this record, summary judgment is appropriate.

### The Summary Judgment Standard

Summary judgment is granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see generally 6 James Wm. Moore, et al., Moore's Federal Practice ¶ 56.15 (2d

ed.1983). The court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party has the burden of showing that there are no material facts in dispute, and the court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing the motion—in this instance, the Defendants. *Bickhardt v. Ratner*, 871 F.Supp. 613 (S.D.N.Y.1994) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Thus, "[s]ummary judgment may be granted if, upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993).

A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir.1997).

The burden on the moving party is especially tough in cases where no there has been no discovery. "[O]nly in the rarest of cases may summary judgment be granted against a [party] who has not been afforded the opportunity to conduct discovery." *Orminski*, 105 F.Supp.2d at 7.

### The Evidence Is Insufficient To Establish Product Liability

With the Bellizzi report excluded, and the door handle issue irrelevant for the reasons set forth above, there is no evidence to establish product liability.

█ A failure to warn claim cannot be advanced in this case. It is undisputed that Rypkema was an experienced operator and a knowledgeable user of the equipment he was operating. He had used the equipment multiple times daily for a six-week period (approximately) prior to the incident. A warning, if given, would not have told Rypkema about the necessity to have the door firmly shut before using it as a hand hold. *See e.g., Travelers Ins. Co. v. Fed. Pac. Electric Co.*, 211 A.D.2d 40, 625 N.Y.S.2d 121 (1st Dep't 1995); *Bigness v. Powell Elecs., Inc.*, 209 A.D.2d 984, 619 N.Y.S.2d 905 (4th Dep't 1994); *Littlehale v. E.I. duPont deNemours & Co.*, 268 F.Supp. 791 (S.D.N.Y.1966); *Billiar v. Minnesota Mining & Mfg. Co.*, 623 F.2d 240 (2d Cir.1980).

█ Manufacturers have no duties to warn of open and obvious dangers. *Bazerman v. Gardall Safe Corp.*, 203 A.D.2d 56, 609 N.Y.S.2d 610 (1st Dep't 1994); *Wilhouski v. Canon U.S.A.*, 212 A.D.2d 525, 622 N.Y.S.2d 319 (2d Dep't 1995); *Jiminez v. Dreis & Krump Mfg. Co., Inc.*, 736 F.2d 51, 55 (2d Cir.1984); *Billiar*, 623 F.2d at 243; *Kerr v. Koemm*, 557 F.Supp. 283 (S.D.N.Y.1983). The standard of determining whether the danger was open and obvious is objective, and irrespective of Rypkema's subjective knowledge of the danger. *Id.* at 287.

The Rypkemas have cited *Liriano v. Hobart Corp.*, 170 F.3d 264 (2d Cir.1999) where the Court of Appeals held that the traditional defenses to failure to warn of "knowledgeable user" and "open and obvi-

ous danger" remain a vital part of New York law, stating:

> A jury could reasonably find that there exist people who are employed as meat grinders and who do not know (a) that it is feasible to reduce the risk with safety guards, (b) that such guards are made available with the grinders, and (c) that the grinders should be used only with the guards.

*Id.,* 271.

■ Here there is no evidence presented of any alternative means of doing cable work of which Rypkema was unaware that should have formed the basis of a warning. In addition, Rypkema, a 30–year phone company veteran who trained others in cable splicing, is not comparable to Liriano, an inexperienced 17–year old immigrant. A similar effort was rejected by the Honorable Deborah A. Batts of this District in *Ramirez v. Komori America Corp.,* No. 94 Civ. 3083, 1999 WL 187072, at *8 (S.D.N.Y. Apr.6, 1999):

> Plaintiff has had extensive experience as a pressman, and was taught about the dangers of printing presses in school. Plaintiff admits he knew it was dangerous to clean the moving rollers of the Sprint 25 by hand, and he advised his supervisors of such. Moreover, it would be obvious even to a person unfamiliar with the working of a press, that the danger posed by touching two rotating rollers would be that a hand could be drawn in and crushed. No showing has been made by Plaintiff that the existence of warnings would have stopped him from manually cleaning the rollers or would have prevented his employers from advocating this method.... *Compare Liriano,* 170 F.3d 264 (finding seventeen-year old operator of meat grinder with only one week of experience and no instructions as to use, sustained a failure to warn claim against manufac-

turers of grinder, jurors could have found it reasonable to require warning to use grinder only with available safety guards).

*Id.* at *8.

What remains is Rypkema's testimony that he did not hear any sign of latch failure and is unsure whether he felt the latch give way. In face of the subsequent use of the door and the absence of any evidence of malfunction before, during and after the incident, there is a failure of proof to establish product liability on the part of Time.

Given this conclusion, the absence of any product liability, the motion to dismiss the third-party complaint against Savvy for inadequate maintenance is granted. No evidence has been adduced that improper maintenance was responsible for Rypkema's injury.

### Conclusion

The report and testimony of Bellizzi is excluded under Rule 702, as a conclusion unsupported by any scientific knowledge, testing or methodology. The motion of Time to dismiss the complaint and the cross-motion to Savvy to dismiss the third-party complaint are granted for failure of evidence to support the complaint.

Settle judgment on notice.

It is so ordered.